## STATE OF OREGON,
*Appellant,*

*v.*

## NOVA LORAINE HALL,
*Respondent.*

(10-84-05413; CA A34258)

720 P2d 376

David L. Runner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Sally L. Avera, Salem, argued the cause for respondent. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

The state appeals a pretrial order suppressing evidence seized under a warrant, on the ground that the supporting affidavit was inadequate under ORS 133.545(3) and the Oregon and federal constitutions. The warrant, which authorized the search of two residences owned or controlled by defendant and her husband, Marvin, was issued on the basis of information provided to the affiant by two unnamed confidential informants. Illegal drugs were seized when the warrant was executed, and defendant was charged with two counts of unlawful possession of a controlled substance.

In Oregon, the adequacy of warrant affidavits is controlled by ORS 133.545(4) (formerly ORS 133.545(3)),[1] which restates the two-pronged *Aguilar/Spinelli* test regarding the adequacy of affidavits based in whole or in part on hearsay statements of unnamed informants. *See Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969); *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 723 (1964); *State v. Montigue,* 288 Or 359, 605 P2d 656, *cert den* 449 US 846 (1980); *State v. Souders,* 74 Or App 123, 128, 700 P2d 1050, *rev den* 300 Or 112 (1985). That test requires that such affidavits set forth:

"* * * (1) The basis of the informant's knowledge, and (2) facts showing the informant's 'veracity,' *i.e.,* that he is credible or that his information is reliable.* * *" *State v. Villagran,* 294 Or 404, 409 n 3, 657 P2d 1223 (1983).[2]

The trial court held that the second prong of that test was satisfied, but that the first was not. We agree and affirm.

The affidavit, dated June 19, 1984, states:

"I, Randy G. Cook, being first duly sworn on oath hereby depose and say that:

"I am a police officer employed by the Springfield Police Department and that I have been a police officer so employed for the past six years. For the past three years as a Springfield

---

[1] ORS 133.545(4) provides, in pertinent part:

"* * * If an affidavit is based in whole or in part on hearsay, the affiant shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

[2] This test satisfies the requisites of both the Oregon and federal constitutions. *State v. Carlile,* 290 Or 161, 619 P2d 1280 (1980).

police officer I have been engaged in both undercover and non-undercover capacities as an investigator related to unlawful controlled substance activities being conducted in the Lane County area.

"I have over three hundred hours of formal training in the area of unlawful controlled substance investigations. In the course of my duty, I have also had contact with numerous confidential informants who have provided information to me concerning alleged controlled substance activities occurring in Springfield, Lane County, Oregon and other areas.

"One such confidential informant began providing me with information in approximately late 1983 with information to the effect that a Marvin Hall was a major trafficker in marijuana and 'crank', which is a street term for the controlled substance methamphetamine. This confidential informant has provided me with a considerable amount of controlled substance information which I would estimate has led to the arrest of perhaps thirty or more persons for controlled substance violations. From my personal experience with the information supplied by this confidential informant, I have found this informant to be very reliable.

"This confidential informant will be referred to hereinafter as CRC. This CRC has informed me that he is personally acquainted with Marvin Hall. He also informed me that Marvin Hall has a wife named Nova and that Marvin Hall is employed by Weyerhaeuser Company in Springfield, Lane County, Oregon. I have personally verified with Weyerhaeuser Company that Marvin Hall is employed at Weyerhaeuser Company and that he has a wife named Nova, and that his address is listed as 989 North 65th Street, Springfield, Oregon.

"The CRC has informed me that within the last ten days, the CRC had a conversation with a person who the CRC personally knows to be a close friend of Marvin Hall's wife, Nova, during which Nova advised that her husband (Marvin Hall) was attempting to become the number one dealer of 'pot', a street word for marijuana, and 'crank', a street word for methamphetamine, in the Springfield area. She also indicated that within the last month, a Springfield police officer was not allowed into the residence because they had in the residence a stolen computer from a burglary at Thurston High School.

"The CRC further advised that Marvin Hall has a safe in the upstairs portion of the residence located at 989 North 65th Street, Springfield, Lane County, Oregon and that Mr. Hall

stores marijuana and methamphetamine within said safe. The CRC also advised me that Marvin Hall has two houses. The CRC advised me that Mr. Hall and his wife, Nova, live in the residence located at 989 North 65th Street, Springfield, Lane County, Oregon and that Mr. Hall keeps the bulk of his controlled substance supply within said residence. The CRC personally showed me where Mr. Hall's second residence was located within Springfield, Lane County, Oregon. This second residence is located at 4949 High Banks Road, Springfield, Lane County, Oregon. From the Springfield Utility Board, I was able to obtain information that Marvin Hall has been paying for the utilities on the High Banks Road residence since 1978. From a conversation with Investigator Al Hartman with the Springfield Police Department, based upon a May, 1984 investigation, Investigator Hartman advised me that a James Green lives in the residence located at 4949 High Banks Road, Springfield, Lane County, Oregon. Investigator Hartman further advised me that a burglary occurred at the Thurston High School, Springfield, Lane County, Oregon on May 5 or May 7, 1984, Springfield Case No. 84-2928, and one of the items stolen in that burglary was a computer.

"The CRC advised me that the person who stays at the High Banks Road residence deals in stolen property and controlled substances for Mr. Hall. The CRC also informed me that this person who lives in the High Banks residence goes to Mr. Hall's residence located on North 65th Street, as described above, to obtain controlled substances for these transactions, which substances are then sold from the High Banks Road house until a new supply is needed from Hall's North 65th Street Residence.

"The CRC also informed me that from personal knowledge there were lots of people constantly coming and going to and from both of Mr. Hall's above-described residences.

"On June 18, 1984, I had a telephone conversation with a person who advised me that they wanted their name kept anonymous but who advised me of the following:

"First, this person inquired as to whether or not I was familiar with a Marvin Hall. When I indicated that I was, this person indicated that there was concern in Mr. Hall's neighborhood (on North 65th Street) that there was a considerable amount of foot traffic at all times of the day and night into and out of Mr. Hall's residence. This person indicated that there was concern in the neighborhood for the safety of neighborhood property rights because of the suspicious comings and goings of said persons. This caller also informed me

that the persons involved in this traffic to and from Mr. Hall's residence on North 65th Street, also were generally there for very short time periods and would then leave. From my previous experience and training, I know that drug transactions generally are of very short duration and that the above-described foot traffic into and out of Mr. Hall's residence is consistent with drug trafficking.

"The CRC also advised me that from his personal knowledge of Marvin Hall, that Mr. Hall has been engaged in trafficking of controlled substances, marijuana and methamphetamine, for a period of months or years.

"From my experience as a police officer, I know that information concerning the identity of the occupants of the residence is relevant to the prosecution of the person or persons involved in the illegal activity as described above. Such items of identification are commonly found on utility bills, telephone bills, credit cards, drivers licenses, personal letters addressed to the occupant(s) and business records located in the premises.

"Based upon the above-described information your affiant has probable cause to believe and does believe that evidence of the crime of Unlawful Possession and Sale of Controlled Substances, to-wit: marijuana and methamphetamine, account ledgers and sales records, and items of identifications set out below, are currently located within the two separate residences which are located at 989 North 65th Street, Springfield, Lane County, Oregon and 4949 High Banks Road, Springfield, Lane County, Oregon. Said residences are further described as follows, the residence on North 65th Street is a two story single family residence, tannish brown in color with brown trim, the numbers 989 are visible on the attached garage, and the residence located on High Banks Road, Springfield, Lane County, Oregon, is further described as a single family type residence, blue in color with white trim.

"WHEREFORE, your affiant prays that this Court issue its warrant to search the above-described residences for the controlled substances marijuana and methamphetamine, and account ledgers and sales records, and items of identification such as utility bills, telephone bills, credit cards, drivers' licenses, personal letters addressed to the occupants and business records."

There is ample reason to accept the finding that the

"CRC"[3] is reliable—that is, the affiant had an adequate basis for believing that the statements made by him were, to the best of his knowledge, true. The problem is that the affidavit does not tell us the basis of the CRC's knowledge concerning the most critical information that he related to the affiant. *See State v. Fink,* 79 Or App 590, 720 P2d 372 (1986). To infer on the basis of the "detail" exhibited, as the state would have us do, that the CRC's knowledge must have been based on his personal observations and that he had been in the Hall residence many times would, for all practical purposes, do away with the requirement that the affidavit disclose the means by which the information was obtained.

In *State v. Villagran, supra,* the court expressed the rationale for requiring more of affidavits to support warrants than the state would have us require here:

> "The premise which underlies the *Aguilar/Spinelli* holdings is that if reliance upon bald conclusions from anonymous informants is countenanced, the independent probable cause review by a neutral magistrate promised by the Warrant Clause will be transformed into a rubberstamp of police warrant requests. A further concern is that information obtained from unnamed sources within the criminal milieu is inherently suspicious. *See Spinelli v. United States,* 393 US 410, 415-16, 89 S Ct 584, 21 L Ed 2d 637 (1969). Accordingly, a body of federal caselaw has developed which requires an affiant relying upon tips from anonymous informants to set forth with some particularity the basis for the informant's knowledge and why the affiant believes the informant reliable and credible so that the magistrate will be able to decide independently whether the informant is truthful and the information is accurate. 1 LaFave, Search and Seizure § 3.3 (1978)."

In that case, the information in question was obtained from a disinterested named citizen when he was contacted by the police. All of it was capable of independent verification, and some of it had been verified by the police.

---

[3] The characterization of the principal informant as a "CRC" (confidential reliable citizen) does not appear to be accurate, because that informant was not just a citizen doing his civic duty; he was a regular police informant. Although we do not treat him as a citizen informant, we will refer to him as CRC to be consistent with that reference in the affidavit. For the purpose of our analysis, we assume that the informants' assertions were, to the best of their knowledge, true.

None of those factors is involved here. The CRC is not a "wholly disinterested citizen providing information to the police at their request." 294 Or at 411. Rather, he is described as one who has provided the affiant with "controlled substance information" over a period of years that has led to the arrest of 30 or more persons. Although some of the incidental information he provided was verified (*e.g.,* the name of Marvin Hall's wife (defendant), the name of his employer, his home address and the address of another residence used by Marvin), the critical information was not. Consequently, the independent verification is useful only in determining the anonymous informant's veracity. It does not aid in resolving how the informant acquired the information he has provided.

The affidavit does establish that the CRC was personally acquainted with Marvin Hall, that he knew the name of defendant, by whom Marvin was employed, the Halls' residence address and the address of another residence used by Marvin. However, the informant did not state that he had ever been in the Halls' residence or that he had personally observed a safe in the "upstairs portion" of their house. Neither does he state that he ever observed either Marvin or defendant in possession of a controlled substance or trafficking in controlled substances or that either Marvin or defendant had told him that they trafficked in controlled substances. His statement that, "from his personal knowledge of Marvin Hall, [Marvin] has been engaged in trafficking of controlled substances, marijuana and Methamphetamines, for a period of months or years" is conclusory and does not explain how he reached that conclusion. The information that there was a lot of foot traffic to and from both of Marvin Hall's residences could have been independently verified but apparently was not.

Therefore, although it is apparent that the CRC had a fair amount of information concerning Marvin, some of which was verified, and that the verified information may have provided probable cause to believe that Marvin dealt in stolen goods, only the conclusory statements and the statement placing a safe allegedly containing controlled substances in the "upstairs portion" of one house support probable cause to search the Hall residences for controlled substances. The source or basis of those statements is not shown, and they lack

the detail required to infer that they were based on his observations, rather than on hearsay or speculation. We note that this is not a case where the police were under any time pressure to obtain a warrant. It is apparent from the affidavit that Marvin had been under investigation for an extended period of time, and there is no explanation why the affiant was unable to state how the CRC acquired the information he claimed to have, which ORS 133.545(4) requires the affidavit to disclose "as far as possible." The information conveyed by the anonymous caller does not change that conclusion, even if we were to conclude that the information was sufficiently detailed to infer that the caller personally observed the comings and goings of persons to and from the Hall residences.

The state's final contention is that the affidavit was sufficient to support the warrant without relying on the inferences we find to be impermissible. We consider, therefore, the adequacy of the CRC's account of his conversation with the person he knew to be a close friend of defendant.[4] The magistrate could have concluded from that conversation that Marvin was attempting to become the number one dealer of marijuana and methamphetamine in Springfield and that, "within the last month," there was stolen property inside the house on North 65th Street. Because the friend did not mention the presence of drugs, however, there was no probable cause to believe that illegal drugs would be found inside the residence. Consequently, the information disclosed by the friend was inadequate to support the warrant issued.[5] The trial court did not err in suppressing the evidence.

---

[4] The trial court held that both prongs of the *Aguilar/Spinelli* test in ORS 133.545(3) were satisfied with respect to this informant.

[5]
"To any police officer, greeting:

"Information on oath having this day been laid before me that evidence of the crimes of Unlawful Possession and Sale of Controlled Substances, to-wit: marijuana and methamphetamine, account ledgers and sales records, and items of identification, i.e., utility bills, telephone bills, credit cards, drivers licenses, personal letters addressed to the occupant(s) and business records, are currently located at the residence at 989 North 65th Street, Springfield, Lane County, Oregon more specifically described as a two story single family residence, tannish brown in color with brown trim with the numbers 9 8 9 visible on the attached garage; and the residence located at 4949 High Banks Road, Springfield, Lane County, Oregon, more specifically described as a single family residence, blue in color with white trim."

Affirmed.

**ROSSMAN, J.,** dissenting.

I believe that the affidavit, if read in a *common sense, nontechnical* manner, adequately establishes the informants' basis of knowledge under *Spinelli v. United States,* 393 US 410, 89 S Ct 584, 21 L Ed 2d 637 (1969), and *Aquilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964). Thus, I do not agree with the majority's conclusion that the trial court properly suppressed the evidence. Accordingly, I dissent.

This case turns on what is, or is not, stated within the four corners of the affidavit. In our evaluation of that document, we should be mindful of two well-accepted and significant legal principles. First, in considering the adequacy of a search warrant affidavit, the court should construe what is stated in the affidavit in a common sense and realistic manner. *State v. Villagran,* 294 Or 404, 408, 657 P2d 1223 (1983). Second, in marginal cases, the court's decision should be tempered by the preference to be accorded warrants. *State v. Harvey,* 53 Or App 478, 482, 632 P2d 487, *rev den* 291 Or 893 (1981). When the present affidavit is viewed in this light, it becomes apparent that it is sufficient.

I begin by focusing on the part of the affidavit reciting the information provided by the so-called "CRC" regarding the 65th Street residence. The affidavit states:

> "The CRC further advised that Marvin Hall [defendant's husband] has a safe in the upstairs portion of the residence located at 989 North 65th Street, Springfield, Lane County, Oregon and that Mr. Hall stores marijuana and methamphetamine within said safe. * * * Mr. Hall keeps the bulk of his controlled substance supply within [the 65th Street] residence."

The trial judge, in his conscientious effort to resolve this case, acknowledged that, under a totality of the circumstances test:

> "* * * I would be comfortable with this affidavit * * * because I think that there's enough detail and enough other information that, looking at the thing in its entirety, I would like to find that it's sufficient. * * *"

However, he chose to disregard the above-quoted information because, in the court's words:

> "* * * In each of those [earlier Oregon] cases, the Court has

indicated there was a two-prong test that needed to be satisfied, and in each of those cases it was satisfied by the fact that there was personal presence by the informant. So it appears to be the law.

"\* \* \* \* \*

"\* \* \* [N]owhere in [the affidavit] does it indicate that the CRC has been personally present or has been in the residence to see the safe or see the drugs on the premises, or whatever. It's just statements that are there."

It seems that the trial court's decision was based on a belief that the case law *requires* that the affidavit contain a direct statement to the effect that the "CRC" was present and saw illegal activity. This also appears to be the underlying premise of the majority opinion.

I believe that the case law runs contrary to such a notion. As we stated in *State v. Mellinger,* 52 Or App 21, 25, 627 P2d 897 (1981):

"\* \* \* Whether a particular affidavit supports the magistrate's determination does not depend upon the existence of specific facts or information. Each affidavit must be examined in a common sense, nontechnical manner, looking at the facts recited *and the reasonable inference that can be drawn from those facts.*" (Emphasis supplied.)

One way in which personal knowledge may be inferred in the absence of an express statement is through the amount of detail given by the informant. *Spinelli v. United States, supra,* 393 US at 416 (citing *Draper v. United States,* 358 US 307, 79 S Ct 329, 3 L Ed 2d 327 (1959)); *State v. Villagran, supra,* 294 Or at 408. Here, the "CRC's" statement is sufficiently detailed to allow an inference of personal knowledge: (1) He related the kinds of drugs which Mr. Hall kept in the 65th Street residence. (2) He referred to the fact that the drugs were kept in a safe. (3) He identified where the safe was kept—upstairs. (4) He also stated that Mr. Hall kept the bulk of his illegal drugs at the residence. I acknowledge that it is most inappropriate indeed for a judge to jump to any conclusions when evaluating the sufficiency of an affidavit but, on the basis of a recitation of such details by the "CRC," I would conclude that it is unlikely that the "CRC" did not make personal observations of those things.

As the state points out in its brief, another way in

which the personal knowledge of an informant may be inferred is through evidence of a personal relationship with a reliable source, such as the defendant himself. *See State v. Villagran, supra,* 294 Or at 412; *State v. Mellinger, supra,* 52 Or App at 25. Here, there are statements throughout the affidavit reflecting a personal relationship between the "CRC" and Mr. Hall and also indicating that the "CRC" had been inside the 65th Street residence on many occasions. Not only did the affidavit state that the "CRC" was personally acquainted with Mr. Hall, it also stated that he was acquainted with defendant, Mrs. Hall. The "CRC" was aware of where Mr. Hall worked. He had personal knowledge that people were constantly coming and going to and from both Hall residences. He expressed personal knowledge that Mr. Hall had engaged in illegal drug trafficking for a substantial period of time. From that information a factfinder could reasonably infer that the "CRC" had been to the 65th Street residence and had seen persons arrive there, engage in illegal drug transactions with Mr. Hall and then leave.

Finally, regarding the 65th Street property, I believe, contrary to the position of the majority, that the information conveyed by the anonymous caller buttresses the affidavit. There are several facts showing that the caller was a neighbor who had actually seen the things which he reported. First, the caller wanted to remain anonymous. One could reasonably infer that he lived near Mr. Hall and was concerned about reprisal should Mr. Hall learn his identity. Second, the caller knew Mr. Hall by name. Third, the caller mentioned a concern for the neighborhood. Fourth, he was also aware of "a considerable amount of foot traffic" at the residence and recited in considerable detail the activity on Mr. Hall's premises, including the times and length of visits. Taking that information as a whole, the caller's personal knowledge is revealed. *See State v. Age,* 38 Or App 501, 503-04, 590 P2d 759 (1979).

Regarding defendant's "second residence" (located at 4949 High Banks Road in Springfield), the affidavit contains three facts which, when read collectively, establish the basis of the "CRC's" knowledge. First, the "CRC" took the affiant to the residence, thus showing that he had been there before. Second, he was aware—in considerable detail—of the activities at the residence, including the procedure by which drugs were transferred from the 65th Street residence and then sold

at this location. Third, he expressly stated that he had personal knowledge of a constant flow of people to and from the residence. *State v. Age, supra; State v. Ashkar,* 24 Or App 447, 451-52, 545 P2d 912 (1976).