Argued and submitted May 22, reversed and remanded for new trial October 7, 1987

# STATE OF OREGON,
*Respondent,*

*v.*

# SUZIE BUFFINGTON,
*Appellant.*

## (86-1739-C-3; CA A42931)

743 P2d 738

Ronald K. Cue, Ashland, argued the cause and filed the brief for appellant.

Jens Schmidt, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before, Warden, Presiding Judge, and Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

Van Hoomissen, J., dissenting.

## JOSEPH, C. J.

Defendant appeals her conviction for possession of a controlled substance. ORS 475.992(1). She contends that the trial court erred in denying her motion to suppress evidence seized pursuant to a search warrant. The issue is whether the affidavit for the search warrant was sufficient. The material parts of the affidavit, made on May 30, 1986, by an Ashland police detective, are set out in the margin.[1]

---

[1]

"That on October 3, 1984, Officer Randy Snow of the Ashland Police Department told me that according to a confidential and reliable informant, a Suzie Buffington was frequenting Ashland Hills Inn where she had a reputation of dealing cocaine. Officer Snow advised me that his informant had proven to be a reliable person in that said informant has given him information which has led to at least two arrests.

"That on February 6, 1985, Special Agent Larry Gorman of the FBI told me that he has been investigating a major west coast cocaine trafficking organization. That a key suspect in that organization had recently stayed at Ashland Hills Inn. Special Agent Gorman further informed me that he was able to obtain the local phone tolls that said suspect made while staying at Ashland Hills Inn. That among the phone numbers that said suspect called was 482-5151. That I checked telephone records at that time and found that said number is to a Suzie Buffington of 901 Glendale Street in Ashland. Another phone number which was called by said suspect was that of an Ashland business known as Plastics Fantastics. That a subsequent investigation into the owner of that business, one Robert Paul Smith, has led to Mr. Smith's arrest on a charge of possession of cocaine after approximately one ounce of cocaine was seized from his residence on January 23, 1986.

"That on May 29, 1986, I checked the newest phone directory and found that 482-5151 is still in the name of Suzie Buffington at 901 Glendale Street, Ashland.

"That on February 14, 1985, I assisted in serving a search warrant at 600 Cove Road, Ashland. That during the course of serving that warrant I discovered cocaine paraphernalia containing cocaine residue. That a document in the residence identified Suzie Buffington as an associate of its occupants.

"That earlier this year I spoke with a confidential and reliable informant who told me that he/she had first-hand knowledge that Suzie Buffington, who lives on Glendale Street, is and has been continuously involved in the sale of cocaine for some time. That this same informant has proven to be reliable in that he/she has given me information which has led to at least one arrest and a narcotics seizure.

"That on April 26, 1986, another confidential and reliable informant told me that he/she also had first-hand knowledge that Suzie Buffington is selling cocaine and has a reputation in the Ashland community as a well-known cocaine dealer. That this informant has also proven to be reliable in that he/she has given me information which has led to at least 5 arrests and several narcotics seizures over the past year.

"That on May 14, 1986, I was contacted by a Walt Demourdant and his wife. That the Demourdants live across the street from 901 Glendale Street. They informed me that they suspected the woman at 901 Glendale Street was selling drugs on a continuous basis. They based this belief on the fact that there has been a tremendous amount of traffic in and out of that residence. That people will frequently stay for only a few minutes. The Demourdants agreed to keep track of

 Defendant contends that the affidavit does not establish probable cause for issuance of the warrant.[2] The state concedes, and we agree, that the information from an informant given to another officer that defendant had been frequenting Ashland Hills Inn and had a reputation there for dealing in cocaine is entitled to no weight, because there is no information about the informant's basis of knowledge about defendant's reputation. ORS 133.545(4);[3] *see Spinelli v. United States,* 393 US 410, 414-15, 89 S Ct 584, 21 L Ed 2d 637 (1969); *State v. Christen/Hankins,* 79 Or App 774, 781, 720 P2d 1303 (1986). She argues that information supplied by the affiant's two confidential reliable informants also lacks facts about their basis of knowledge and that the information is stale. She also asserts that the magistrate drew impermissible

---

these visitors and over the past 2 weeks they have provided me with over 30 different license plates of people visiting 901 Glendale Street. That I have checked the criminal records of approximately half of the registered owners of those vehicles and found that 4 of them have criminal records showing prior arrests on narcotics charges and another is currently under investigation by the Ashland Police Department for cocaine trafficking. That on the evening of May 28, 1986, the Demourdants informed me that the amount of traffic to 901 Glendale has been increasing even more over the past few days.

"That on May 29, 1986, I checked with the Ashland Department of Utilities and confirmed that the utilities at 901 Glendale Street are still in the name of Suzie Buffington.

"* * * * *

"That based upon the above and foregoing, I hereby pray for a warrant to search that certain property located at 901 Glendale Street, in the City of Ashland, County of Jackson, State of Oregon, further described as a green and white duplex on Glendale Street near the intersection of Siskiyou Blvd., having the numbers '901' conspicuously displayed to the right of the front door, the residence of a Suzie Buffington, for the controlled substance cocaine, along with the items associated with its sale, packaging, and use, such as paperfolds or 'bindles', scales, sifters, 'toot straws', vials, sales ledgers, and IOU's, and items identifying co-conspirators in the trafficking of cocaine such as phone tolls and address books, and an order to seize same if found."

[2] Defendant relies only on Article I, section 9, of the Oregon Constitution and not on the Fourth Amendment. Accordingly, we will not review her claim under the federal "totality of the circumstances" test in *Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983).

[3] ORS 133.545(4) provides:

"The application shall consist of a proposed warrant in conformance with ORS 133.565 and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affidavit shall set forth facts bearing on any unnamed informant's reliability and shall disclose, as far as possible, the means by which the information was obtained."

inferences from information provided by police officers and recited in the affidavit. The state argues that, read in a common sense and realistic manner, the affidavit gave the magistrate probable cause to believe that defendant was in possession of cocaine in her residence. Whether a particular affidavit supports the magistrate's determination of probable cause does not depend on the existence of specific facts or information. Each affidavit must be examined in a common sense, realistic and nontechnical manner. *State v. Villagran,* 294 Or 404, 408, 657 P2d 1223 (1983); *State v. Mellinger,* 52 Or App 21, 25, 627 P2d 897 (1981).

■ The affidavit was made on May 30, 1986. It recites, after the information that the state concedes cannot be considered, that an FBI agent told the affiant *16 months earlier* that "a key *suspect*" in a narcotics investigation had telephoned defendant's number from a motel in the same town. Even if it would be reasonable to infer that the suspect actually talked to defendant, without more information there is no basis for any reasonable inference of what the conversation was about. The recitation that another telephone call by that suspect had been made to a business, the owner of which was arrested almost a year later in possession of cocaine in another place, says absolutely nothing about defendant. The inference that, because a suspect made two telephone calls, one of which was to a person who later was found in possession of contraband, there was something illicit about a telephone call to defendant is overdrawn and tenuous and is not reasonable. The same can be said about the discovery in the execution of another search warrant on other premises that defendant was "an associate of its occupants": it says nothing about the *conduct* of defendant. Neither of those parts of the affidavit is entitled to any weight.

■ Most of the rest of the information in the affidavit is hearsay based on the statements of informants who may well satisfy the reliability aspect of the test for judging the propriety of issuing a warrant on the basis of information furnished by unidentified informants. They are said to base their information on first-hand knowledge, but nothing in the affidavit explains the quality or source of that information. The statements lack any detail that would permit an inference that

they were based on actual observations, rather than on hearsay or speculation. Had the informants known anything specific, such as having seen defendant selling cocaine, having bought some from her or having sold some to her, it is reasonable to infer that they would have said so. They did not, so far as the affidavit discloses.

Under *State v. Hall,* 79 Or App 597, 720 P2d 376, *rev den* 301 Or 765 (1986), it is impermissible to issue a warrant on the basis of informants' statements which are purely "conclusory and do[es] not explain how [the informant] reached that conclusion." 79 Or App at 604. There is no difference between the informants' "personal knowledge" in *Hall* and the informants' "first-hand knowledge" in this case. In *Hall,* we refused to give the information the benefit of an inference that it was information directly obtained, and we cannot make the inference here in the absence of any factual support for it. Moreover, the information furnished by the informants was more than a month old when the affidavit was made. There was nothing available to the magistrate to close the one month gap, and the information was too stale to offer support for a warrant.

On the basis of an unusually large amount of traffic centered on defendant's residence and the brief duration of each visitor's stay, two of her neighbors formed a suspicion that defendant "was selling drugs on a continuous basis." The police determined who were the owners of about 15 of 30 or so of the automobiles and found that four of them had at some unstated time been arrested on narcotics charges and that a fifth was then under investigation for narcotics activity. Two days before the affidavit was made, the neighbors had told the affiant that the amount of traffic had recently increased. Given that the number of cars *over a period of 14 days* was about 30 and that about a quarter of the owners of those had been found to have some history of involvement with narcotics, there was some basis for an inference about the illicit activity at the house, but the presumed innocence of the people checked and found to have no narcotics background or arrested and not convicted weighs against an inference unfavorable to defendant. Under *State v. Urbach,* 83 Or App 39, 730 P2d 571 (1986), and in the absence of any evidence that an unusually large number of people entering and quickly leaving a residence is in itself an indication of drug trafficking,

the magistrate was not entitled to draw an inference against defendant that would amount to probable cause sufficient to support the issuance of a search warrant.

We hold that the affidavit did not support the issuance of a search warrant. The fruits of the search under the warrant should have been suppressed.

Reversed and remanded for a new trial.

**VAN HOOMISSEN, J.,** dissenting.

I would hold that the affidavit is sufficient and that the magistrate had a substantial basis for his decision to issue the warrant. Therefore, I respectfully dissent.

When faced with an insufficiency argument, our function is to determine whether, on the basis of the facts and circumstances shown by the affidavit, a neutral and detached magistrate could conclude that there was probable cause to believe that the search would discover things specified in the affidavit in the places requested to be searched. We must construe the affidavit in a commonsense and realistic fashion. *State v. Villagran,* 294 Or 404, 408, 657 P2d 1223 (1983). Searches based on search warrants must be encouraged. Marginal cases must be resolved in favor of the preference accorded to warrants. In a close case, the benefit of the doubt must be given to the issuing magistrate.

An affidavit supporting a search warrant is tested by much less rigorous standards than those governing the admissibility or weight of evidence at trial. *State v. Wilson/ Helms,* 83 Or App 616, 620, 733 P2d 54, *rev den* 303 Or 172 (1987); *State v. Harvey,* 53 Or App 478, 481-82, 632 P2d 487, *rev den* 291 Or 893 (1981). Whether a particular affidavit supports the magistrate's determination does not depend on the existence of specific facts or information. Each affidavit must be examined in a common sense, realistic and nontechnical manner, looking at the facts recited and the reasonable inferences that may be drawn therefrom. *State v. Mellinger,* 52 Or App 21, 25, 627 P2d 897 (1981). After the fact scrutiny by courts of the sufficiency of an affidavit must not take the form of *de novo* review.

The majority treats this affidavit as though it is based

*solely* on information supplied by informants.[1] However, it is not based solely on informant information; it contains much more.

First, the affidavit alleges that on February 6, 1985, FBI agent Gorman told the affiant that, while staying at a motel in Ashland, a key suspect in a major west coast cocaine-trafficking organization had telephoned *defendant* at her home in Ashland. A magistrate could infer either that the suspect had telephoned defendant to discuss the illegal use of cocaine or that the suspect had telephoned her for innocent reasons. However, the affidavit further alleges that Gorman told the affiant that the suspect also had telephoned an Ashland business. A subsequent investigation of the owner of that business led to his arrest on a charge of unlawful possession of cocaine after about an ounce of cocaine was seized at his residence. Read together, those allegations support a reasonable inference that defendant and the suspect were discussing a cocaine deal. That a person the suspect called was arrested in January, 1986, for possession of cocaine strengthens that inference.

Second, the affidavit alleges that, while executing a search warrant at a different residence in Ashland on February 14, 1985, the affiant discovered cocaine paraphernalia containing cocaine residue and that a document in the residence identified *defendant* as an associate of its occupants. That

---

[1] *Aguilar v. Texas,* 378 US 108, 84 S Ct 1509, 12 L Ed 2d 723 (1964) held that, when a search warrant is issued *solely* on information supplied by an informant, the affidavit must contain information bearing on the reliability of the informant and the basis of his knowledge. *See State v. Christen/Hankins,* 79 Or App 774, 781, 720 P2d 1303 (1986). *Spinelli v. United States,* 393 US 410, 418, 89 S Ct 584, 21 L Ed 2d 637 (1969) held that an informant's tip, which alone does not satisfy *Aguilar* nevertheless, may be considered by a magistrate along with other corroborative information in the affidavit to establish probable cause. *See State v. Christen/Hankins, supra,* 79 Or App at 782.

The *Aguilar/Spinelli* rule, codified in ORS 133.545(4), has little relation to the real world in which probable cause determinations are made. The rule does not provide usable guidance to the police who must prepare affidavits, often under limitations of time, training and experience, or to magistrates, who may not be lawyers, who decide whether to issue warrants. The United States Supreme Court has rejected the *Aguilar/Spinelli* test, *see Massachusetts v. Upton,* 466 US 727, 104 S Ct 2085, 80 L Ed 2d 721 (1984); *Illinois v. Gates,* 462 US 213, 103 S Ct 2317, 76 L Ed 2d 527 (1983), and has adopted a "totality of the circumstances test." The Oregon Legislature should do likewise. An overall practical determination, based on the "totality of the circumstances," should be substituted for the formalism of *Aguilar/Spinelli,* which, as this case convincingly demonstrates, has become unduly rigid.

allegation supports a reasonable inference that defendant was associated with known possessors or users of cocaine and, when read in conjunction with the other material allegations of the affidavit, it supports a reasonable inference that the sale of cocaine was the basis of the association.

Third, the affidavit alleges that two of defendant's neighbors told the affiant that they suspected that defendant "was selling drugs on a continuous basis," based on the unusually large amount of traffic in and out of her residence and the brief duration of each visitor's stay. Of the 30 license plate numbers the neighbors provided the police over a two-week period, the affiant checked the criminal records of about half of the registered owners. He found that four had criminal records showing arrests on narcotics charges. A fifth was then under police investigation for cocaine trafficking. On May 28, 1986, the neighbors told the affiant that the amount of traffic had been increasing over the past few days. The magistrate properly considered that information. *See State v. Ingram,* 251 Or 324, 328-29, 445 P2d 503 (1968).

Defendant argues that, under *State v. Urbach,* 83 Or App 39, 730 P2d 571 (1986), unless the magistrate was presented with evidence that an unusually large number of people entering and quickly leaving a residence is an indication of drug trafficking, the magistrate could not reasonably reach that conclusion. In *Urbach,* we held that, standing alone, the allegation that an informant reported seeing 1/4 to 1/2 ounce of methamphetamine in the defendant's home within the past 48 hours would not support the issuance of a warrant, because there was nothing else in the affidavit to support the inference that the drug would still be there. We found significant the absence of any information from which the magistrate could determine whether the amount seen was such that it would not have been used or sold within 48 hours. In this case, when read together with all the other information in the affidavit, the information provided by defendant's neighbors supports a reasonable inference that defendant was continuing to sell drugs in her residence within a few days before the affidavit was made. The trial court stated that "in reason and logic, * * * an individual looking at this from a common sense standpoint would conclude that someone in [defendant's] house is probably selling drugs." We recently stated that common

sense is a proper component of probable cause if the articulated facts otherwise support it. *State v. Cole/Hood,* 87 Or App 93, 98 n 3, 741 P2d 525 (1987). On these facts, common sense tells me that, more likely than not, defendant was dealing cocaine at her house.[2]

Fourth, I do not agree with the state's concession that the reputation information provided to the affiant by officer Snow is entitled to *no* weight. Defendant's reputation for dealing cocaine also was corroborated by one of the affiant's informants who told him on April 26, 1986, that defendant "has a reputation in the Ashland community as a well-known cocaine dealer." As we noted recently in reviewing probable cause for an arrest,

> "[defendant] urges strongly that not one of his observed activities could not have easily been engaged in by an innocent man. That is true. It is also beside the point. What [defendant] ignores is that probable cause emerges not from any single constituent activity, but, rather, from the overall pattern of

---

[2] At the suppression hearing, the trial court stated, in relevant part:

"The raw facts here are that on May 14th '86 the neighbors tell us what they observed and there's 30 different license plates of people visiting at 901 Glendale, and the officer then checks the criminal record of approximately half of the registered owners and found four of them have criminal records showing prior offenses for narcotics.

"* * * * *

"And they stayed for short periods of time. I can agree with everything else you say about the Affidavit. The other is bald conclusion, but to me the neighbors — and I take it they are reasonable people, and I think that the law ought to support that type of belief in the community, and I think that that is sufficient to establish probable cause. I recognize that no one went into the house and no one says in here that if you go in there you'll probably find marijuana. I think in reason and logic, though, an individual looking at this from a common sense standpoint would conclude that someone in that house is probably selling drugs. So recognizing that it may be a close call with respect to *State v. Hall,* that's the way I'm going to construe this Affidavit. So the Motion to Suppress is denied."

The trial court's quoted statement could be read to mean that it found that everything in the affidavit, except the information provided by defendant's neighbors, was "bald conclusion," but that the neighbors' information alone was strong enough to overcome any other deficiencies in the affidavit. I would not read the court's statement in that manner. Rather, I conclude that the court examined the affidavit *in its entirety* and found that it was sufficient. However, even if the trial court sustained the sufficiency of the affidavit solely on the basis of the neighbors' information, this court must review the *affidavit* to determine whether it gave the *magistrate* probable cause to issue the search warrant, and we are bound to affirm the trial court even if it is right for the wrong reason. *See State v. Carter/Dawson,* 287 Or 479, 488, 600 P2d 873 (1979); *State v. Dowell,* 274 Or 547, 552, 547 P2d 619 (1976).

activities. Each fragment of conduct may communicate nothing of significance, but the broad mosaic portrays a great deal. The whole may, indeed, be greater than the sum of its parts." *See State v. Cole/Hood, supra,* 87 Or App at 97 n 2 (quoting *Dawson v. State,* 11 Md App 694, 707, 276 A2d 680 (1971)).

Fifth, in addition to the above information, the affidavit contains information provided independently by *two* confidential, reliable informants. Their veracity was sufficiently demonstrated. Their history of providing reliable information showed that they were truthful. *See State v. Horwedel,* 66 Or App 400, 674 P2d 623, *rev den* 296 Or 638 (1984); *State v. Koppenhafer,* 59 Or App 213, 650 P2d 981, *rev den* 294 Or 149 (1982); *State v. Smith,* 51 Or App 777, 627 P2d 26, *rev den* 291 Or 151 (1981). Other allegations in the affidavit tend to corroborate their information, further showing their veracity. *See State v. Christen/Hankins, supra* n 12.

As for their basis-of-knowledge, both informants stated that their information was based on "first-hand knowledge."[3] That allegation supports a reasonable inference that the informants were eyewitnesses and that their knowledge was not based on rumor or on the unverified report of a third person. It is reasonable to infer that the informants knew that defendant was selling cocaine because, for example, they had seen her doing so, bought some from her or had sold some to her for resale. The majority states that, if the informants had seen defendant selling cocaine or had bought some from or sold some to her, it is reasonable to infer that they would have said so. However, we do not review *de novo.* It is not relevant what the informants could have said. The question is whether the magistrate reasonably could infer from what the informants did say that their information was based on their personal observations. The informants' basis-of-knowledge is strengthened by the other information in the affidavit which,

---

[3] Defendant relies on *State v. Hall,* 79 Or App 597, 720 P2d 376, *rev den* 301 Or 765 (1986). *Hall* is distinguishable. There, we stated that an informant's statement that, "from his personal knowledge," the defendant's husband had been engaged in drug trafficking for some time is "conclusory and does not explain how [the informant] reached that conclusion." 79 Or App at 604. There is a difference between the informant's "personal knowledge" in *Hall* and the two informants' "first-hand knowledge" in this case. One could as reasonably infer that the former was based on hearsay as that it was based on personal observation. In this case, it is reasonable to infer that the informants knew defendant was selling cocaine because, for example, they had seen her doing so, bought some from her or had sold some to her for resale.

cumulatively, is sufficient to show probable cause. *See State v. Christen/Hankins, supra,* 79 Or App at 781-82. Where, as here, the affiant reports mutually supportive tips from several informants, that corroboration should not be ignored or totally discounted.

"Basis of knowledge" and "veracity" should not be rigidly compartmentalized. Rather, a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. *Illinois v. Gates, supra,* 462 US at 233. "Basis of knowledge" and "veracity" are still highly relevant but they are not entirely separate and independent requirements. They should be understood simply as closely intertwined issues that may usefully illuminate the common sense practical question whether there is probable cause. *Illinois v. Gates, supra,* 462 US at 238. Although Oregon courts must apply the *Aguilar/Spinelli* test, ORS 133.545(4), the question is: What does that test require?

In *Illinois v. Gates, supra,* the United States Supreme Court explained:

"Our original phrasing of the so-called 'two pronged test' in *Aguilar v. Texas, supra,* suggests that the two prongs were intended simply as guides to a magistrate's determination of probable cause, not as inflexible, independent requirements applicable in every case. In *Aguilar,* we required only that 'the magistrate must be informed of *some of the underlying circumstances* from which the officer concluded that the informant * * * was "credible" or his information "reliable." ' [*Aguilar v. Texas, supra* n 1, 378 US] at 114 (emphasis added).

"As our language indicates, we intended neither a rigid compartmentalization of the inquiries into an informant's 'veracity,' 'reliability' and 'basis of knowledge,' nor that these inquiries be elaborate exegeses of an informant's tip. Rather, we required only that *some* facts bearing on two particular issues be provided to the magistrate. Our decision in *Jaben v. United States,* 381 U.S. 214 (1965), demonstrated this latter point. We held there that a criminal complaint showed probable cause to believe the defendant had attempted to evade the payment of income taxes. We commented:

"'Obviously any reliance upon factual allegations necessarily entails some degree of reliability upon the credibility of the source. * * * Nor does it indicate that each factual

allegation which the affiant puts forth must be independently documented, or that each and every fact which contributed to his conclusions be spelled out in the complaint. * * * *It simply requires that enough information be presented to the Commissioner to enable him to make the judgment that the charges are not capricious and are suf-. ficiently supported to justify bringing into play the further steps of the criminal process.'* [381 US] at 224-225 (emphasis added)." 462 US at 230 n 6.

The majority's analysis under ORS 133.545(4) does not follow the guidance provided by the United States Supreme Court in *Illinois v. Gates, supra.*

*Even if* the affidavit does not set forth the means by which the informants gained their knowledge, that does not mean that their tips cannot be used in determining probable cause. Their information may be used with other information in the affidavit to establish probable cause. *See Spinelli v. United States, supra; State v. Christen/Hankins, supra,* 79 Or App at 782. 1 LaFave, *Search and Seizure,* § 3.3, 566-67 (1978), explains:

"More difficult is the case in which it cannot quite be said that 'probable cause is established without necessary resort to the hearsay' but where this other information standing alone is nonetheless highly suspicious. May it be said in such a case that the informant's story, albeit lacking a showing of the basis of knowledge, may be taken into account for the purpose of supplying the 'little bit more' which is needed to elevate this other information up to the level of probable cause? The answer is yes. As stated in *Spinelli v. United States,* [*supra,* 393 US at 418,] though there 'the informant's tip—even when corroborated to the extent indicated—was not sufficient to provide the basis for a finding of probable cause,' it does not follow 'that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. * * *' "

As for defendant's "staleness" argument, the first informant told the affiant earlier in 1986 that "he/she" had first-hand knowledge that defendant "*is* and has been continuously involved in the sale of cocaine for some time." The other informant told the affiant on April 26, 1986, that defendant "*is* selling cocaine * * *." Further, the information from defendant's neighbors was current. In addition to their earlier reports, they also told the affiant that the amount of traffic to

defendant's house had been increasing *over the past few days.* The affidavit was executed on May 30, 1986. Therefore, there was information in the affidavit that defendant was still selling cocaine up to about a month before the affidavit was made.

*Even if* the affidavit was insufficient, I would not suppress the evidence. The police had objectively reasonable grounds for believing that the warrant was properly issued. Therefore, I would apply a good-faith exception to the exclusionary rule. *See United States v. Leon,* 468 US 897, 104 S Ct 3405, 82 L Ed 2d 677 (1984).

In sum, I would hold that the affidavit is sufficient. It gave the magistrate a substantial basis for his decision. Although standing alone the informants' tips might not establish probable cause, because the affidavit failed to fully disclose the basis of their knowledge, that information, combined with the other information in the affidavit, provided a sufficient basis from which the magistrate could find probable cause to believe that there was evidence of criminal activity on the premises searched. Therefore, giving deference to the magistrate's judgment, I would affirm the trial court.