Argued and submitted February 19, affirmed July 21, 1982

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL JOE BATTLE,
*Appellant.*

### (No. C81-02-31049, No. C81-02-31050, CA A21842, CA A21843)

### (Cases Consolidated)

648 P2d 411

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William Gary, Solicitor General, Salem.

Before Gillette, Presiding, Judge, Joseph, Chief Judge, and Young, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant appeals his convictions for burglary in the first degree and attempted burglary in the first degree. He claims that the trial court erred in denying his motion to suppress evidence found as a result of an allegedly illegal stop and frisk. He also claims that evidence seized after his arrest, the victim's out-of-court identification and his confession were the result of the illegal stop and frisk and should have been suppressed as "fruits of the poisonous tree" under *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

On February 10, 1981, at 11 a.m., officer Baker responded to a call about a burglary at an apartment on 100th Avenue in northeast Portland. The resident advised Baker that, while he was taking a shower, he heard someone ring the doorbell nine times, which was followed by a scuffling sound in the living room. When he came out to check, the intruder ran away. He described the burglar as follows, according to police testimony at the trial:

> "He said he was a black male, and he was about six one, 175 pounds, and that he was wearing, I recall, a new style European jacket, and he said it was beige and that he had dark blue pants on * * * and that he was neat and clean looking."

Baker broadcast this information to other officers.

Officer Fields heard Baker's broadcast and unsuccessfully searched in the general area. He then proceeded north on 102nd Avenue as he headed back to his district. On that street, 19 blocks from the crime scene, he saw defendant getting off a northbound bus. Fields testified:

> "I observed a black male from the distance I was at, at about six feet tall, 150-160 pounds, beige jacket and blue pants, which correlated with the description that I received from Deputy Baker * * *. It was a basic European style jacket."

Fields approached defendant and asked him where he was coming from. Defendant stated, "I'm coming from home." Fields advised him of the basis for the inquiry:

> "I told him I received information on a burglary that occurred just a couple of blocks due north of Halsey, and

the description that I received, basically fit the way he was dressed, and I asked him would he please come back to that location, and if everything was fine there would be no problem."

Defendant moved as if to enter the patrol car, then turned and ran. After a short chase, the officer caught him, and a brief scuffle followed. Officer Pronesti, who covered the incident in response to hearing Fields say on the radio that he was going to stop a suspect, assisted in handcuffing defendant.

Fields frisked defendant for weapons. He "felt a hard object in [defendant's] left pocket" that felt like a pair of pliers. He said it "didn't feel like a gun." Fields seized the pliers. He then transported defendant back to the crime scene. Pronesti followed in another car. Baker described the on-the-scene identification as follows:

"I brought the victim out of his apartment and told him that we had a person in the back seat of Deputy Fields' car, that he wasn't under arrest; he may or may not be the suspect that was in his house, but we'd like for him to take a look at him * * *. [The victim] looked into the back seat, and he said, 'That definitely is him.' "

Fields then formally arrested defendant for burglary, advised him of his rights and transported him to headquarters, where he searched defendant and "removed [a] ring from his pocket." On the basis of information received from Baker, Fields "knew" the ring was stolen. Fields and Pronesti then questioned defendant. Defense counsel stipulated:

"I would stipulate that [defendant], pursuant to interview with Mr. Pronesti, gave a confession in detail of what happened. There's no claim that the Miranda rights were not given."

Defendant first argues that there was an insufficient basis to justify the officer's accosting him at the bus stop. He maintains that he was stopped because his "race, height, weight, jacket and pants were similar to the broadcasted description," whereas he is 3 or 4 inches shorter and 20 or 25 pounds lighter than the person described. He also suggests that the fact that he was 19 blocks

from the scene some 30 minutes[1] after the burglary does not sufficiently connect him to the crime to justify the stop.

ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

"Reasonably suspects" is defined by ORS 131.605(4):

" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to ORS 131.615."

When the police know that a crime has been committed:

"* * * [T]he question is no longer whether there is reasonable suspicion that a crime has been committed, but rather whether there is a reasonable possibility that the person under observation is connected with the crime which the police believe to have been committed." *State v. Ott,* 54 Or App 309, 313, 634 P2d 825, *rev den* 292 Or 334 (1981); *State v. Denny,* 27 Or App 455, 458, 566 P2d 719 (1976), *rev den* (1977).

Defendant's location 19 blocks from the burglar some 30 minutes after it had occurred clearly did no *exclude* him from the class of possible suspects. Given tha his race, sex and somewhat distinctive clothing matche that of the burglar, we conclude that the officer's suspicio that defendant was "connected to the crime" was reasor able.

Defendant next argues that the frisk wa unjustified. He points out that ORS 131.625 provides:

"(1) A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present.

"(2) If, in the course of the frisk, the peace officer feels an object which he reasonably suspects is a dangerous or

---

[1] The record does not indicate how soon after the burglary the encoun occurred. In colloquy, defense counsel stated 30 minutes had elapsed. That is inconsistent with Fields' testimony that he searched the general area and l located defendant elsewhere.

deadly weapon, he may take such action as is reasonably necessary to take possession of the weapon."

He claims that, because there was no information that defendant was armed and dangerous and no direct testimony at trial that Fields "reasonably suspected" defendant had a weapon, the frisk was unjustified. The state contends that, because defendant attempted to flee when "invited" into the patrol car, "that attempt was sufficient to elevate Fields' suspicion to the level of probable cause, and therefore to justify defendant's being forcibly taken into custody, as he was, and being searched incident thereto." *See State v. Schneider,* 51 Or App 161, 166, 625 P2d 150 (1981).

■ Although the fact that defendant matched fairly closely the description of the burglar could not alone have given rise to probable cause for an arrest, that and the additional fact that defendant turned and ran after apparently voluntarily agreeing to accompany Fields to the burglary scene did. *See State v. Williams,* 253 Or 613, 456 P2d 494 (1969); *State v. Patterson,* 5 Or App 438, 485 P2d 429, *rev den* (1971). The officer had probable cause to arrest defendant at the time he was handcuffed, and the search was incident to an arrest.

Affirmed.