Argued and submitted October 21, 1983, affirmed January 11, reconsideration denied February 24, petition for review denied April 3, 1984 (296 Or 712)

## STATE OF OREGON,
*Respondent,*

*v.*

## GARLAND LEE NORMAN, ·
*Appellant.*

### (C82-07-36456; CA A28001)

674 P2d 626

Martin W. Van Zeipel, Portland, argued the cause and filed the brief for appellant.

Jan Peter Londahl, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his conviction for possession of a controlled substance (heroin). ORS 475.992. He contends that the trial court erred in denying his motion to suppress evidence seized during a warrantless search of his person. The issue is whether the police had probable cause to arrest defendant before he was searched. Defendant concedes that if the arrest was valid the search incident to that arrest was valid. He has not raised any issue regarding the search *per se.* We affirm.

The facts are not disputed. Officer Wong testified that, while in a marked police car with another uniformed officer on N. E. Union Avenue in Portland, he saw defendant and one Wilson engaged in conversation outside a restaurant known as "Fred's Place." Wong described "Fred's Place" as being "nothing more than a hangout for narcotics dealers and users" and "a known place where people buy and sell drugs and narcotics." Wong testified further that he saw defendant hand Wilson a "wad of bills" with his left hand and Wilson place something in defendant's right hand. Defendant then placed his right hand in his right pants pocket. Wong described the transaction as a classic "hand-to-hand sale" of narcotics.[1]

---

[1] Officer Wong testified:

"Q Now, can you explain to the Judge what a hand-to-hand sale is?

"A A hand-to-hand sale usually deals with a speed buyer and a user and a hand-to-hand sale is a situation where the transaction is done right out on the street corner usually, and it usually entails one person, the buyer handling the seller money and at the same time the seller with a clenched fist with the merchandise or the drugs, whatever the drugs are, handing the buyer the drugs in the palm of his hand; that is, the person that's selling the drugs has the drugs in his hand making a fist, sliding it over the palm of the hand to the buyer and the buyer immediately taking the drugs, closing it up in his fist and placing the drugs in his pocket.

"Q Now, do they do this transaction, the exchange of money and drugs, simultaneously?

"A Yes, it's simultaneously. One person hands the other person the money, the other person just simply hands the other person the drugs.

"Q What do you mean by 'palm of the hand'?

"A Well, usually in these street transactions, you know, it's not your typical drug transaction where you're talking about a great deal of drugs, where one person looks at the drugs, test it, and then they count the money out and they exchange, you know, one for the other. These are usually done, like I said, between the buyer and the user, that is, a drug dealer and a narcotics user, and it's — a deal is usually

The police car stopped almost in front of where defendant and Wilson were standing. When they saw Wong, "[they] had a real look of surprise. They turned and stared at [him]. Their eyes went open. Their jaws dropped. [T]hey both started walking rapidly towards the door of Fred's Place." Wong ordered the men to stop, but they continued, almost running, into Fred's Place. He followed them inside and brought them back outside. He then searched defendant and found heroin in his right pants pocket. More heroin was discovered in defendant's pocket when he was searched again at the jail.

At the suppression hearing, Wong testified that he had made about 150-200 "drug-related" arrests in his nine-year police career; that, in addition to a large amount of training regarding drug enforcement and investigation at the Portland Police Academy, he had had 80 hours of special training in a drug enforcement program; that he had participated in about 50 narcotics-related arrests inside Fred's Place; and that he had made 20 to 30 arrests for similar "hand-to-hand" sales. The trial court concluded that Wong had probable cause to arrest.[2]

■ ■　　Defendant contends that the police did not have probable cause to arrest. For a "stop" to be valid, the police must have had a reasonable, articulable basis, under all the circumstances, for suspecting the stopped person to have

---

made by mouth-to-mouth or verbal agreement and one person just simply reaches in his pocket, usually the dealer, and he has it in the palm of his hand, reaches in his pocket and puts — pulls out the drugs and has it in the palm of his hand, clenches it in his fist, and just slides it over the buyer's hand. The buyer takes it and they usually never look at it because they know exactly what they're buying, what the price is.

"The buyer usually immediately conceals the drugs because — simply because they're usually done out in public or in a public place or public street."

[2] The trial court stated:

"THE COURT: Well, gentlemen, this sounds a little like a Clint Eastwood type of scene here, but you do have Fred's Place which has a reputation of being a drug sale type of place, you have an officer spotting what he described as a classic exchange where he sees money and something in the hands being passed. He's handled about 30 of these cases where he's actually been involved, so based on his judgment of the facts there and based on his experience, based on the locale and based on what he described as a classic exchange, not just — this is not a drug profile type of situation as alluded to by the airport situation, the Court's familiar with that. It's a very close case, but I think we crossed the line on probable cause. Motion denied."

committed a crime. ORS 131.615(1); 131.605(4). *State v. Miller,* 54 Or App 323, 328, 634 P2d 1361 (1981), *rev den* 292 Or 450 (1982). At the time he ordered defendant to stop, Wong knew the following facts: (1) he had observed an exchange between defendant and Wilson, (2) his training and experience told him that what he saw was a classic "hand-to-hand sale" of narcotics and (3) Fred's Place had a reputation as a hangout for drug dealers and users. Those facts gave Wong a reasonable, articulable basis under all the circumstances for suspecting that defendant and Wilson had committed a crime. ORS 131.615; ORS 131.605(4); *see State v. Taylor,* 62 Or App 586, 661 P2d 569, *rev den* 295 Or 297 (1983); *but see State v. Valdez,* 277 Or 621, 628, 561 P2d 1006 (1977) (instinct and experience alone cannot form entire basis for reasonable suspicion); *State v. Ponce,* 43 Or App 665, 603 P2d 1243 (1979) (unusual but legal behavior insufficient to justify stop). Therefore, Wong could "stop" defendant and Wilson and make further inquiry.

When defendant and Wilson saw Wong, they both started walking rapidly toward Fred's Place. They then failed to obey Wong's order to stop. Instead they continued, almost running, into Fred's place. That gave probable cause to arrest defendant. *See State v. Williams,* 253 Or 613, 456 P2d 497 (1969) (fact that defendant fled when officers approached relevant to probable cause determination); *State v. Battle,* 58 Or App 224, 229, 648 P2d 411 (1982) (defendant ran after agreeing to accompany police to burglary scene); *State v. Muckleroy,* 26 Or App 179, 181, 552 P2d 257, *rev den* 276 Or 211 (1976) (defendant's attempt to flee considered in probable cause determination).

Probable cause to arrest requires that there be a substantial objective basis for believing it more likely than not that an offense has been committed and that the person to be arrested has committed it. ORS 131.005(11). Under the totality of the circumstances, we find that Wong had probable cause to arrest. The search incident to that arrest was lawful.

Affirmed.