Argued and submitted December 22, 1983, affirmed May 9, reconsideration denied June 15, petition for review denied July 10, 1984 (297 Or 459)

## STATE OF OREGON,
*Respondent,*

*v.*

## NORMAN JAY RINEHART STILES,
*Appellant.*

(10-82-08107, CA A27383; 10-83-00630, CA A28243)
(Consolidated Cases)

680 P2d 1016

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his convictions for burglary in the first degree. ORS 164.225. He contends that the trial court erred in denying his motion to suppress evidence.[1] The dispositive issue is whether defendant was lawfully arrested. We conclude that he was and affirm.

Shortly after 2 p.m., Detective Davis and Dickerson, a former police officer, were driving through a residential neighborhood. They observed defendant and one Magill leaving the backyard of a residence through a hedge and over a downed fence. Defendant was carrying a shaving kit and a felt bag that reminded Davis of his wife's jewelry bag. Magill was carrying a suitcase. The men walked at a normal pace across the street. Davis' and Dickerson's suspicions were aroused, and they decided to investigate further.[2]

Davis drove his car alongside the men and stopped. Dickerson then stated, "Police officers. We would like to see

---

[1] This is a consolidated criminal appeal. In No. 10-82-08107, the trial court denied defendant's motion to suppress, and he was convicted after a trial to the court. In No. 10-83-00630, he stipulated that the ruling on his motion to suppress would be the same, and he was convicted after a jury trial.

[2] Davis, who had 19 years' police experience, testified:

"I assumed that when I seen [sic] them come out of the back yard. It was quite obvious to me that no one is going to come walking out of that back yard. I got suspicious right then.

"* * * * *

"They could have lived there, but in my opinion, there's no way anyone would come through them [sic] shrubs, through that back yard, especially two young boys like this carrying something like this * * * (indicating).

"It was quite obvious to me that they had just committed a burglary."

Dickerson, who had 13 years' police experience, testified:

"Based on years of training and experience contacting people, the first thing that struck me was there was no walkway provided for anybody to come through that area.

"If it had been their own residence, I'm sure they would not have torn down their fence or walked through a row of bushes to get out. There was [sic] other paths that they could have taken."

In *State v. Elkins*, 245 Or 279, 290, 422 P2d 250 (1966), the Supreme Court observed:

"It should not be forgotten that it is the duty of police officers to ferret out crime. It is their business to be suspicious * * *."

some identification, please." The men stopped. Davis identified himself as a police officer and displayed his badge. Defendant had no identification. Magill handed his wallet containing a visible driver's license to Dickerson, who returned it and asked that Magill remove the license from the wallet. Instead, Magill dropped the suitcase and ran, shouting something that sounded to Davis like, "Split, run!" Davis immediately seized defendant and handcuffed him. He then opened the shaving kit, observed its contents and advised defendant of his *Miranda* rights. The entire encounter lasted less than a minute. Later, at the police station, defendant made incriminating statements. The suitcase Magill had carried was searched, and incriminating evidence found in it was seized.

Defendant's pretrial motions to suppress physical and testimonial evidence obtained as a result of his contact with the police were denied. The trial court found that defendant had not been stopped,[3] that he was arrested when Davis seized and handcuffed him and that Davis had probable cause to arrest. The court also found that

"* * * defendant was advised of his rights, he knew his rights, and he testified that freely and voluntarily no threats were made against him. He was not coerced in any manner, and that his statements were made freely and voluntarily after he had been so advised of his Constitutional rights and he knew those."

Defendant contends that the initial encounter between himself and the police was an unlawful stop and that his subsequent arrest lacked probable cause. He also contends that his incriminating statements and evidence seized during the search of the shaving kit and suitcase should have been suppressed as derivative of the antecedent illegality. *See State v. Painter*, 296 Or 422, 676 P2d 309 (1984). The state contends that the initial encounter was not a stop, but that, if it was a stop, it was based on a reasonable suspicion that defendant had committed a crime. It also contends that Davis had

---

[3] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

probable cause to arrest defendant and that the searches were incident to a lawful arrest.

Defendant was lawfully "stopped." Davis suspected that defendant and Magill had committed a burglary and, on the evidence here, we conclude that that suspicion was reasonable. When Magill ran, that action gave Davis probable cause to arrest defendant. ORS 133.310; ORS 131.005(11); *see State v. Norman,* 66 Or App 443, 447, 674 P2d 626, *rev den* 296 Or 712 (1984).

As to defendant's statements, the findings of the trial court are supported by the evidence, and we are bound by them. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). We agree with the court's conclusion that defendant's statements were admissible.

5. The searches of the shaving kit and suitcase were close in time and space to the arrest and were relevant to the crime for which defendant was arrested. Therefore, they were permissible as being incident to arrest. *See State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

Affirmed.