Argued and submitted June 29, reversed and remanded August 26, reconsideration denied October 2, petition for review denied October 27, 1987 (304 Or 280)

# STATE OF OREGON,
*Appellant,*

*v.*

# JEFF ALLEN COLE,
# ROBIN RONALD HOOD,
*Respondents.*

(86-0532, 86-0531; CA A42363)

741 P2d 525

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

John Daugirda, Deputy Public Defender, Salem, argued the cause for respondents. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Rossman, Judges.

VAN HOOMISSEN, J.

**VAN HOOMISSEN, J.**

Defendants were charged with possession of a controlled substance. ORS 475.992. The state appeals from a trial court order allowing defendants' motions to suppress. ORS 138.060(3). The dispositive issue is whether the police had probable cause to arrest defendants. We conclude that they did and reverse.

During the evening of April 25, 1986, Officer Janin and Officer Rhodes, a trainee, were on patrol on Farmington Road in Beaverton. They were in uniform in a marked police car. Rhodes drove while Janin watched the area. Near the intersection of Farmington Road and Lombard, Janin told Rhodes that they were in an area of five major Beaverton business establishments whose parking lots were the scenes of many fights and thefts and where the consumption of alcohol and illicit drugs in parked vehicles was common.

Janin saw two people, later identified as defendants, in the front seat of a car in the parking lot of the Mandarin Palace restaurant, formerly called Jekyll and Hyde's. The restaurant was open at the time, and the parking lot was full. The car was parked, and its lights were off. As the officers drove by, Janin noticed that the occupants were not getting out of the car. Rhodes turned the police car around and parked it about 15 yards from defendants' car. Janin got out and walked toward defendants' car. He stopped near the car's right rear tail light. He saw that defendant Cole, the passenger, was seated upright and appeared to be watching defendant Hood, the driver, whose attention was focused on his lap, with his arms close to his body. He appeared to be fumbling with something in his lap. Janin walked closer. He saw that Hood had a flashlight in his right hand while his left hand was on his knees. Cole turned around, saw Janin standing near the right door of the car and turned back toward Hood. Janin then saw Hood move his left hand and place a flat object underneath the seat directly below his knees. From his position outside the car, Janin saw a red and white drinking straw, about two inches long, on the car seat between defendants. He arrested defendants for possession of cocaine. Rhodes then reached under the front seat and removed a small mirror with powder and a razor blade on it.

Janin had made several arrests of people possessing

cocaine in the area of the Mandarin Palace. Before he saw defendants, he had witnessed 10 to 15 other people "snorting" cocaine.[1] He also had seen cocaine users using plastic straws, either red and white or blue and white, usually cut to about two inches in length.

The trial court stated, in relevant part:

"The question is simply put — and I think it has been mentioned that this is a probable cause case — did the officer, that is, Janin, have probable cause to make [an] arrest? And what I am trying to avoid here is common sense, because, you know, if we are going to deal only in common sense, everything that the officer did here is strictly appropriate, because any one of us in this courtroom would come to the same belief that he came to based on his experience * * *.

"But the reason I knew it was Jekyll's and Hyde's is — on — well, in any event, I have heard so many of these cases myself that as soon as I learned the location, I am thinking, 'Cocaine Corridor,' because that is what I call this place, you know, and I just knew they were going to find cocaine in this car, and so did the officer; so that is common sense.

"But unfortunately when we are talking about the government seeking criminal conviction and, thereafter, criminal sanctions against a person, we can't just take a common-sense approach. We have to follow what the rules are, and we know the rules here are reasonable — probable cause, and it just doesn't seem to me that the officer had probable cause in this case to make the arrest; so I would grant the motion to suppress."

---

[1] Janin testified:

"Usually I have found one to two people occupying the front seat of the motor vehicles, and their arms would be close to their body. They will be intently focused upon an activity about their lap during which time their head will often come in close contact to their hands. As they bring their hands towards their face usually hand movements which is [sic] involving the use of a small toot straw or straw or a folded U.S. currency bill wherein the cocaine is snorted off a smooth surface, classically a mirror, anything from a cassette tape box to a paperback book are some of the things I have found.

"In this manner, the person will bring the object up close to his nose. They will ingest the cocaine through the nostril. He will move the flat surface back to his nose in the context of snorting several lines of cocaine.

"* * * * *

"Often they will be seated in the seats sitting upright; however, they are sometimes bent towards the center as usually when parties or subjects are lining cocaine in lines to snort the cocaine, they do this to where each other will be focused on it, watching each other's activity."

The court found, in relevant part:

"That defendants were under arrest at the time of the seizure of the straw and cocaine. Further, that common sense would indicate to the officers that the defendants were involved in the use of cocaine. However, that the officers did not have sufficient probable cause to arrest these defendants at this time * * *."

The state contends that the trial court erred in suppressing the evidence. It argues that, on the basis of Janin's training, experience and observations, he had probable cause to believe that defendants possessed cocaine.

■ An officer may arrest without a warrant if the officer has probable cause to believe that a person has committed a felony. ORS 133.310(1)(a). Probable cause means that there is a substantial objective basis for believing that, more likely than not, an offense has been committed and that the person to be arrested has committed it. ORS 131.005(11). If probable cause supported the arrests, the seizure of the evidence was the result of a lawful search incident to arrest. *See State v. Caraher,* 293 Or 741, 653 P2d 942 (1982).

■ The question of whether there is probable cause to arrest is usually decided on an *ad hoc* basis because of the tremendous number of possible fact combinations. *State v. Cloman,* 254 Or 1, 10, 456 P2d 67 (1969). The test is one of the totality of the facts and circumstances, not of isolated facts. *See State v. Rector/Tremaine,* 82 Or App 466, 475, 729 P2d 1 (1986), *rev den* 302 Or 614 (1987); *State v. Jones,* 9 Or App 629, 632-33, 498 P2d 390 (1972).[2] An act which might appear innocent to a layperson may be incriminating when viewed by a trained and experienced police officer, especially when evaluated in conjunction with other factors. *See State v. Ratliff,* 82 Or App 479, 483, 728 P2d 896 (1986), *rev allowed* 303 Or 172 (1987); *State v. Chambers,* 69 Or App 681, 686, 687 P2d 805

---

[2] "[Defendant] urges strongly that not one of his observed activities could not have easily been engaged in by an innocent man. That is true. It is also beside the point. What [defendant] ignores is that probable cause emerges not from any single constituent activity, but, rather, from the overall pattern of activities. Each fragment of conduct may communicate nothing of significance, but the broad mosaic portrays a great deal. The whole may, indeed, be greater than the sum of its parts." *Dawson v. State,* 11 Md App 694, 707, 276 A2d 680 (1971).

(1984); *see also State v. Goodman,* 42 Wash App 331, 338, 711 P2d 1057 (1985).

When he arrested defendants, Janin knew that (1) the parking lot of the Mandarin Palace, recognized by the trial court as part of "Cocaine Corridor," was in a high-crime area where consumption of illicit drugs was common; (2) the restaurant was open but defendants were remaining in a parked car with its lights off; (3) they were engaged in some activity in the front seat and that both defendants' attentions were directed at something held in Hood's lap; (4) Hood appeared to be fumbling with something in his lap with the aid of a flashlight, with his arms close to his body; (5) when Cole saw Janin standing near the car's passenger door, Cole immediately turned toward Hood, who quickly hid a flat object under the seat directly below his knees; (6) cocaine is normally snorted off a smooth surface, (7) a two-inch straw, similar to those he had seen being used by cocaine users before, was on the seat between defendants; and (8) his training and experience told him that what he had witnessed was two people preparing to "snort" cocaine.

We agree with the trial court's assessment that

"everything that [Janin] did here is strictly appropriate, because any one of us in this courtroom would come to the same belief that [Janin] came to based on his experience."

In our view, Hood's attempt to conceal something quickly in apparent response to the presence of police combined with the other factors, gave Janin an objective basis to believe it more likely than not that defendants were in possession of cocaine. *See State v. Green,* 67 Or App 70, 73, 676 P2d 938, *rev den* 297 Or 82 (1983); *State v. Norman,* 66 Or App 443, 447, 674 P2d 626 (1983), *rev den* 296 Or 712 (1984). As the trial court observed:

"[I] am thinking, 'Cocaine Corridor,' because that is what I call this place, you know, and I just knew they were going to find cocaine in this car, and so did the officer; so that is common sense."[3]

The arrests were lawful. The searches incident to arrest were

---

[3] If the articulated facts otherwise support it, common sense is a proper component of probable cause. *See State v. Wilson/Helms,* 83 Or App 616, 620-21, 733 P2d 54, *rev den* 303 Or 172 (1987).

also lawful. *State v. Caraher, supra.* The trial court erred in allowing defendants' motions to suppress.

Reversed and remanded.