Argued and submitted December 21, 1988, reversed and remanded for new trial
March 8, 1989

# STATE OF OREGON,
*Respondent,*

*v.*

# LEVESTER ANFIELD,
*Appellant.*

(C 87-12-36880; CA A48488)

770 P2d 919

Ingrid A. MacFarlane, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds,* Judges.

GRABER, P. J.

---

* Edmonds, J., *vice* Warden, J., retired.

## GRABER, P. J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992(4). He assigns as error the denial of his motion to suppress evidence obtained in a warrantless search of a bag that he was carrying. We reverse.

At about 3:25 a.m. on November 18, 1987, officers Smith and Hooper, who were in a marked patrol car, saw defendant walking down a street in a "high drug area," carrying a bag over his shoulder. Smith shined a spotlight on defendant and asked to speak to him. The officers parked their car by the curb several feet in front of defendant; both of them got out of the car and walked back toward him. Smith stood immediately in front of defendant and Hooper stood behind him. Smith told defendant that there had been a lot of burglaries in the area and asked for his identification. At the suppression hearing, Smith could not remember whether defendant handed over his driver's license. Defendant testified that he gave Smith his driver's license and that Smith did not return it.[1] One of the officers ran a check to see if there were any outstanding warrants for defendant. Smith asked him if he had any stolen property and asked for permission to look in his bag. Defendant said that he had no stolen property and consented to the search.[2] Smith found a "clear plastic crack pipe" containing white residue, which Smith suspected was cocaine. He then placed defendant under arrest. A further search of defendant and of his bag yielded crack cocaine and drug paraphernalia.

The trial court determined:

"I think in fairness the initial contact by the police, could we talk to you, could be interpreted as a consensual encounter. However the Court believes from the totality of the circumstances that shortly thereafter, within a matter of seconds it became a stop. A reasonable person would not have felt free to leave. So therefore the Court is going to find, although there

---

[1] The trial court did not make a finding as to whether the officer received or retained defendant's license.

[2] The trial court credited the testimony of the officer, who said: "And do you have any stolen property and do you mind if I look in your bag for stolen property. And at that point he said I can." The defendant denied that he gave consent. The officer testified that he was looking specifically for VCR's and car radios and that defendant's bag measured about 14 by 10 by 10 inches.

was an encounter when he asked, could we talk to him, what occurred after that indicates the position of the officers, one in front, one in back, realistically, light shining, officer in uniform, a reasonable person would believe that their [*sic*] freedom of movement had been restrained at least temporarily.

"\* \* \* \* \*

"I find that officer Smith asked if [defendant] had any stolen property and whether he could look in the bag. And [defendant] was, at that time, of the view that [Smith] was asking for permission to search the bag for stolen property. And I find that [defendant] gave [Smith] authority to do that.

"\* \* \* \* \*

"And I find that the original stop was, when they talked to you initially, was okay but \* \* \* [s]hortly after that it became a stop which was not based upon reasonable suspicion. You could have walked away. But I find that you gave authority to search the bag for stolen property. And when they did that they found not stolen property but other items offensive to the law."

Defendant contends that there was a stop and that the stop was illegal, because the officers had no "reasonable suspicion" that defendant had committed a crime. ORS 131.615(1); ORS 131.605(4). Because the stop was illegal, he argues, the state has not met its higher burden to show that defendant's consent to search was voluntary. *State v. Kennedy,* 290 Or 493, 502, 624 P2d 99 (1981). The state concedes that the officers had no reasonable suspicion to stop defendant but asserts that the encounter was "mere conversation" that required no justification. *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978). The state further argues that defendant's consent to the search was voluntary.

■ As did the trial court, we agree with defendant that he was stopped before the officer asked for permission to search. A "stop" occurs when the police restrain a person's liberty by physical force or show of authority. *State v. Warner, supra,* 284 Or at 162. "A person is 'restrained' when, in view of all the circumstances, a reasonable person would have believed that he was not free to leave." *State v. Horton,* 86 Or App 199, 202, 738 P2d 609 (1987). A reasonable person would not have felt free to leave when two uniformed officers shined a spotlight on

him and then physically blocked his movement forward or backward.

■      We also accept the state's concession that the officers lacked a "reasonable suspicion" at the time of the stop. *See* ORS 131.605(4). Defendant was merely walking down the street at night, in a "high crime" neighborhood, carrying a bag. Without more, that activity does not support a reasonable suspicion that he had committed a crime. *See State v. Penney,* 87 Or App 357, 359-61, 742 P2d 660 (1987).

■      The trial court ruled that, despite the illegal stop, defendant voluntarily consented to the search. Notwithstanding the court's use of the word "finding," its ruling is a legal conclusion. We are not bound by it if the historical facts are insufficient to support it. *State v. Ledbetter,* 95 Or App 187, 768 P2d 431, 432 (1989). "To determine if a defendant's consent to search was valid, the totality of the facts and circumstances must be examined to ascertain whether the consent was a product of the defendant's free will or was the result of coercion, express or implied." *State v. Hageman,* 59 Or App 96, 101, 650 P2d 175 (1982).[3]

> "In *State v. Warner, supra,* and *State v. Kennedy, supra,* the court examined the historical facts for voluntariness of consent. Both cases involved consent after an illegal stop. In *Kennedy* the court found that the consent was voluntary and emphasized the non-coercive nature of the encounter. Two plain-clothes police officers approached the defendant in an airport parking lot, and within moments the defendant suggested a search of his luggage. In *Warner,* the court found that the facts indicated an involuntary consent and took particular

---

[3] The state argues that the consent was voluntary, because the officers did not "exploit" the illegal stop. The state asserts that

> "the police did not observe anything, as a result of the encounter with defendant, which led them to seek a consent to search which they would not otherwise have sought. Still less did they apprise defendant that they had observed anything as a result of the alleged stop, in an effort to induce him to consent to a search of his backpack. Hence, there was no exploitation of any illegality which may have existed in this case * * *."

However, exploitation of an illegal act is only one of the bases for suppressing evidence. A court should suppress evidence discovered in a consent search if the police obtained the consent by "exploitation of the illegality *or* [if] defendant's free will [is] tainted by the illegal police conduct." *State v. Kennedy, supra,* 290 Or at 501. (Emphasis supplied.) It is the second prong of the test that applies to the pre-arrest search in this case.

note of the coercive atmosphere created by the presence of six uniformed police officers and three marked police cars." *State v. Hageman, supra,* 59 Or App at 102.

In *Hageman,* undercover officers kept a house under surveillance in an attempt to catch two jail escapees. The defendant's car left the house at 1:00 a.m., and an undercover officer followed it. He radioed for a uniformed officer to stop the car. Moments after the uniformed officer stopped the defendant, a second officer arrived.[4] That officer saw a knapsack on the floor of the vehicle and asked for permission to search it. The defendant consented. The officer found narcotics and arrested the defendant. We held that the stop was illegal, because it was not based on reasonable suspicion. We further held that the consent was involuntary, because the totality of the circumstances indicated a coercive atmosphere.

As in *Hageman,* the totality of the circumstances here constituted a coercive atmosphere, as a matter of law. Two uniformed officers stopped and detained defendant. They approached him in a marked police car in the middle of the night and shined a spotlight on him. They then got out of the car and positioned themselves in front and in back of him while they questioned him. Defendant testified that he "couldn't have walked away from them because [Smith] stopped me from actually walking." Immediately after asking for his identity, Smith asked defendant for his consent to search the bag. Defendant agreed to the search. On those facts, the state failed to carry its burden to prove that defendant's consent was a product of his free will.

Because the state failed to show that the consent was voluntary, evidence obtained in the pre-arrest search must be suppressed. Because the additional evidence obtained in the post-arrest search would not have been discovered but for the improper pre-arrest search, that later discovered evidence also must be suppressed. ORS 133.683. The trial court erred in denying defendant's motion to suppress.

Reversed and remanded for a new trial.

---

[4] It is unclear whether the second officer was in uniform.