Argued and submitted April 24, affirmed September 25, petition for review denied December 17, 1996 (324 Or 488)

## STATE OF OREGON,
*Respondent,*

*v.*

## RICHARD DWAYNE BLOUNT,
*Appellant.*

### (95CR0367; CA A89033)

924 P2d 860

James N. Varner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Judith Brant, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General.

Before Deits, Presiding Judge, and De Muniz and Leeson, Judges.

LEESON, J.

De Muniz, J., dissenting.

## LEESON, J.

Defendant appeals his convictions for possession and delivery of a controlled substance, ORS 475.992, and two counts of felon in possession of a firearm, ORS 166.270. He assigns error to the trial court's denial of his motion to suppress evidence. We affirm.

On October 9, 1994, at about 10:00 a.m., Deputy Oswald investigated a citizen complaint about people using property near a remote forest road late at night. Oswald knew that it was common for people to use remote areas of the county to consummate illegal drug activities. He went to the area, heard a vehicle driving down the road, followed it and subsequently found defendant standing alone by a pickup truck at the end of the road. Oswald saw "a lot of vehicle tire tracks" to the point where defendant had stopped his truck, but beyond that point he saw only one other set of tire tracks. Oswald parked his patrol car near the truck and saw that there were no other vehicles in the area.[1] He approached defendant and asked him what he was doing there. Defendant replied that he "just came down" there. Oswald obtained defendant's identification and determined that his driver's license was suspended, which was an infraction.

When he began talking to defendant, Oswald noted that defendant appeared to be under the influence of methamphetamine. Oswald testified that he has had extensive training and experience with narcotics arrests and, as a result, can identify when someone is under the influence of methamphetamine. He described such a person as "hyper":

> "Their eyes are bloodshot; glassy pupils; tend to be enlarged; somewhat unresponsive to light. They are nervous; jittery."

He testified that defendant displayed these physical characteristics, and that defendant's eyes were dilated and somewhat unresponsive.

---

[1] Sometime during Oswald's encounter with defendant, another car drove into the area. The driver talked to defendant for a moment and then drove on.

Oswald explained to defendant the problem that the police were having with narcotics activity in remote areas of Coos County. Oswald asked defendant if he could see what was in his pockets. According to Oswald, defendant said "sure" and started taking various items out of his pockets, including a pouch that contained bindles. According to defendant, Oswald "insisted" or "directed" him to hand over his jacket, which Oswald then searched, found the pouch and opened it. The bindles contained a white powder residue that Oswald recognized as methamphetamine. After seeing the bindles, Oswald asked defendant if defendant had anything in his truck that defendant should not have, and requested permission to search the truck. Defendant responded that Oswald could search the truck but stated that there were two weapons in it and that he would like to move the truck before Oswald searched it, in case Oswald decided to arrest defendant. Oswald responded that it would be foolish for Oswald to allow defendant to get into the truck if there were weapons in it. According to Oswald, he then asked defendant to sit in the patrol car for officer safety. Oswald searched defendant's truck for additional evidence of possession of a controlled substance and found several more bindles of methamphetamine, narcotics paraphernalia, and two guns. Defendant testified that he did not give Oswald consent to search the truck, that he did not feel that he had any choice but to get into the patrol car and that Oswald handcuffed him before putting him into the car. After searching the truck, Oswald arrested defendant for possession of a controlled substance.

Defendant moved to suppress the seized evidence on the ground that Oswald lacked probable cause to search defendant or his truck and that defendant had not consented to either search. The trial court denied defendant's motion. It first ruled that defendant did not consent to the search of his person. Nonetheless, it held that the evidence seized from his jacket was admissible because Oswald had probable cause to search defendant. The court reasoned:

"* * *[T]here doesn't have to be probable cause to arrest somebody; there can be probable cause to search somebody and I think when an officer finds somebody who clearly manifests that he's been using a drug that that's sufficient cause to search him for those drugs. * * *

"I think where an Officer comes up into a remote area and sees a Defendant who * * * had all the physical characteristics of somebody who's using methamphetamine, that the officer has a right to believe that the Defendant would be possessing methamphetamine and therefore has a right to search him."

The court further ruled that whether defendant consented to the search of his truck was irrelevant, because, by the time Oswald searched the truck, he had probable cause to arrest defendant for possession of a controlled substance and the search of the truck was valid under the automobile exception.

On appeal, defendant challenges only the trial court's holding that Oswald had probable cause to search. He contends that the trial court erred in making a "distinction between probable cause to arrest and some, apparently, lower standard of probable cause to search." He contends that "if there was not probable cause to arrest defendant, there was not probable cause to search him either." He relies on *State v. Lavender*, 93 Or App 361, 762 P2d 1027 (1988), for the proposition that "a reasonable belief that a defendant is under the influence of a controlled substance, standing alone, does not make a defendant subject to being arrested and searched." The state replies that *Lavender* "clearly suggests that evidence of drug intoxication may be enough when coupled with any additional evidence to provide probable cause to arrest for [possession of a controlled substance]," and that Oswald's search of defendant was valid incident to his arrest.

A warrantless search is unreasonable unless it falls within one of the recognized exceptions to the warrant requirement. *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992). A search incident to arrest is one of those exceptions. An officer must have an arrest warrant or probable cause to arrest to justify a search incident to an arrest. *State v. Kemp / Haworth*, 112 Or App 522, 528, 831 P2d 37, *rev den* 313 Or 627 (1992). The fact that a search precedes an arrest by a few moments does not keep the search from being incident to the arrest, "so long as there was probable cause for the arrest and the initial search was related to the reason for the arrest." *State v. Anfield*, 313 Or 554, 835 P2d 908 (1992). The question in this case, therefore, is whether Oswald had probable

cause to arrest defendant for possession of a controlled substance.

 "Probable cause" to arrest means that "there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11). Whether probable cause exists depends largely on the facts of each case, *State v. Warner*, 284 Or 147, 149, 585 P2d 681 (1978), and is based on the totality of those facts and circumstances. *State v. Cole/Hood*, 87 Or App 93, 97, 741 P2d 525, *rev den* 304 Or 280 (1987). The significance of particular facts to the determination of probable cause may be evaluated on the basis of an officer's training and experience. *State v. Reid*, 107 Or App 352, 354-55, 811 P2d 1380 (1991). An act that might appear innocent to a layperson may be incriminating when viewed by a trained and experienced police officer, especially when evaluated in conjunction with other factors. *Cole/Hood*, 87 Or App at 97. The test is not simply what a reasonable officer could have believed but what the

> "officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience[.]" *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986).

In this case, defendant does not challenge the trial court's finding that Oswald believed that he had probable cause to arrest. The narrow question that defendant presents is whether, under *Lavender*, Oswald actually had probable cause to arrest.

In *Lavender*, police were called to a small park in Medford to investigate a report that the defendant was standing in the park screaming. The responding officers asked the defendant her name and observed that she appeared intoxicated. She told them that her father had recently died and that she was very upset. The officers told her to calm down and left. Soon thereafter they learned from a dispatcher that there was an outstanding warrant for the defendant's arrest for criminal mischief and possession of methamphetamine. The officers returned to the park and,

while the defendant was looking through her purse for iden-tification, one of them shined a flashlight into it. In an apparent effort to prevent its contents from being seen, the defendant quickly closed her purse and pulled it away. The officers arrested the defendant on the outstanding warrant. They subsequently searched her purse and found methamphetamine and narcotics paraphernalia. The trial court suppressed the evidence seized from the purse on the ground that the search of the purse was not justified incident to the defendant's arrest on the outstanding warrant.

On appeal, the state conceded that the search of the purse was not justified as a search for evidence of the offense for which the defendant was arrested on the outstanding warrant. 93 Or App at 363-64. Rather, it contended that the police officers had probable cause to believe that the defendant's purse contained evidence of the offense of possession of a controlled substance and that the search therefore was valid incident to arrest on that charge. We characterized the question as "whether probable cause existed to believe that [the defendant's] purse contained *evidence of another offense then being committed*," and held that probable cause was lacking. *Id.* at 364. (Emphasis supplied.) We noted that "the fact that defendant closed her purse and pulled it away from the officers could not support probable cause to believe that she had committed a crime," and that even if the defendant had been detained for detoxification, methamphetamine found in her purse could not have been used in the subsequent criminal proceeding. *Id.* Consequently, the only evidence the state had to support probable cause was that the defendant appeared to be under the influence of a controlled substance. We held that, although the officers might reasonably have believed that the defendant was under the influence of a controlled substance, "that fact alone could not make her subject to being arrested and searched" for evidence of an offense *then being committed. Id.* at 364. (Emphasis supplied.)

Here, as in *Lavender*, there is no dispute about whether it was reasonable for Oswald, based on his training and experience, to believe that defendant was under the influence of a controlled substance. However, we disagree

with defendant that *Lavender* compels reversal. Here, probable cause to arrest for possession of a controlled substance was based on more than the fact that defendant was under the influence of methamphetamine. Oswald had been called to investigate complaints about traffic in a remote forested area. Oswald previously had made several drug-related arrests in remote areas of Coos County, he knew that such areas were used to "consummate illegal activities such as narcotics," and there were many tire tracks in the area where defendant had stopped his truck. Oswald encountered defendant alone and visibly under the influence of a controlled substance, which defendant does not dispute. Unlike in *Lavender*, nothing in Oswald's conversation with defendant suggested to him any other explanation for defendant's behavior or caused him to believe that someone other than defendant had introduced the methamphetamine into defendant's body. Consequently, Oswald was entitled to infer that defendant had possessed methamphetamine before introducing it into his body. In sum, it was objectively reasonable for Oswald to believe that it was more likely than not that defendant had committed the offense of possession of a controlled substance.

■ Although we have consistently held that a person's presence in a "high crime" area, by itself, is insufficient to provide probable cause, we have also consistently held that presence in a "high crime" area along with other factors can be sufficient to establish probable cause. *See Reid*, 107 Or App at 355 (objective factors, including officer's knowledge that defendant was in area where drugs were commonly sold, evaluated in the light of officer's training and experience constituted probable cause to arrest); *State v. Moya*, 97 Or App 375, 378, 775 P2d 927 (1989) ("The location of defendant's car [in front of a known 'drug hotel'] and her earlier presence in the area may have assumed heightened significance had the officers *noticed any other indications of likely criminal activity*") (emphasis supplied)), and *Cole/Hood*, 87 Or App at 98 (officer's knowledge that a restaurant's parking lot was in a high-crime area relevant to probable cause determination that the defendants possessed a controlled substance). The dissent contends that, because neither visible intoxication

nor presence in a high crime area alone is sufficient to constitute probable cause, the coalescence of the two has no significance. 143 Or App at 592-93. However, as we observed in *Cole/Hood*, the test for probable cause "is one of the totality of the facts and circumstances, not of isolated facts." *Cole/Hood*, 87 Or App at 97.

Based on the totality of circumstances, and in the light of Oswald's training and experience, we conclude that Oswald had probable cause to arrest defendant for the offense of possession of a controlled substance. His search of defendant was relevant to the crime for which defendant was arrested. *State v. Caraher*, 293 Or 741, 759, 653 P2d 942 (1982). Defendant does not contend otherwise.

The trial court did not err in denying defendant's motion to suppress.

Affirmed.

**DE MUNIZ, J.,** dissenting.

The majority holds that Deputy Oswald had probable cause to arrest defendant for possession of a controlled substance, and thus the authority to search defendant's person incident to that arrest. As I understand the majority's analysis, it essentially relies on two factors in finding probable cause—defendant's visible drug intoxication and his presence in a remote forested area that the deputy suspected was used to "consummate illegal activities such as narcotics." Because neither of these factors is sufficient to establish probable cause, I respectfully dissent.

As the majority acknowledges, defendant's drug intoxication, by itself, cannot justify the warrantless arrest and search. *State v. Lavender*, 93 Or App 361, 364, 762 P2d 1027 (1988). The majority reasons, however, that probable cause was based on more than the fact that defendant was under the influence of methamphetamine. The majority states: "[N]othing in Oswald's conversation with defendant suggested to him any other explanation for defendant's behavior or caused him to believe that someone other than defendant had introduced the methamphetamine into defendant's body." 143 Or App at 589. I fail to understand the significance of that observation and, more specifically, how that

is a factor distinct from the intoxication itself. I would suspect that rarely, if ever, is there any indication that anyone but the intoxicated person introduced drugs into his or her own body. That fact adds nothing to the analysis. In *Lavender*, there was also no indication that anyone but the defendant had introduced controlled substances into her body, but we did not consider that an additional factor, apart from her intoxication, in determining the validity of the subsequent arrest and search. We should not do so here.

The majority's other factors include complaints about traffic in a remote forested area and defendant's presence there; the deputy's knowledge that such areas are used to consummate drug activities in Coos County; and the presence of tire tracks near defendant's vehicle.[1] These several reasons actually amount to a single factor—defendant's presence in an area that the deputy suspected was associated with drug activity. However, we have consistently held that a person's presence in a "high crime" area, by itself, is insufficient to provide "reasonable suspicion" of criminal activity, much less probable cause.

In *State v. Butkovich*, 87 Or App 587, 743 P2d 752, *rev den* 304 Or 548 (1987), the defendant's presence in a vehicle parked in the lot of a closed fast-food restaurant at 2:00 a.m., in a neighborhood hit by a string of recent burglaries, did not by itself establish a reasonable suspicion sufficient to support a stop under ORS 131.615. *Id.* at 590-91. In *State v. Moya*, 97 Or App 375, 775 P2d 927 (1989), the defendant was parked across the street from a hotel known as a source of extensive drug activity when she was approached by two police officers. In finding insufficient reasonable suspicion, we held that

> "[t]here is nothing inherently suspicious about parking in or 'frequenting' such an area. * * * When all is said and done, police suspected defendant for simply being where she was. That is an insufficient basis for a stop." 97 Or App at 378.

---

[1] Sometime during Oswald's encounter with defendant, another vehicle drove up, and the driver talked briefly with defendant and then drove on. That fact does not indicate involvement in criminal activity.

In *State v. Anfield*, 95 Or App 568, 770 P2d 919 (1989), we held that a defendant walking down the street at night in a high crime neighborhood carrying a bag, without more, "does not support a reasonable suspicion that he had committed a crime." *Id.* at 571. In *State v. Aguilar*, 139 Or App 175, 912 P2d 379, *rev den* 323 Or 265 (1996), we held that a defendant entering a car parked in front of a known drug house, by itself, did not "provide reasonable suspicion to believe that he had engaged in a drug transaction there." *Id.* at 182. *See also State v. Bates*, 304 Or 519, 526, 747 P2d 991 (1987) ("Neither the hour nor the 'high crime' nature of the area tells us whether *this* defendant is likely to be a criminal[.]" (Emphasis in original.)).[2]

If mere presence in a high crime area is not enough to establish reasonable suspicion to stop under ORS 131.615, then it is certainly inadequate to establish probable cause to arrest. "The statutory standard for stopping is less than the probable cause standard for an arrest." *Butkovich*, 87 Or App at 590.

The majority's analysis therefore rests on two factors—defendant's intoxication and his presence in an area possibly associated with drug activity—neither of which individually establishes probable cause to believe that defendant was in possession of a controlled substance.[3] Considering

---

[2] We have held that a defendant's presence in a high crime area justifies a stop, but only when he has engaged in some "affirmative conduct" indicating criminal activity, which is lacking here. *See State v. Wolfe*, 93 Or App 401, 405, 763 P2d 154 (1988), *rev den* 307 Or 303 (1989) (in neighborhood hit by burglaries, defendant seen approaching homes bearing "for sale" signs and disappearing briefly behind one home before returning to vehicle); *State v. Stiles*, 68 Or App 297, 299, 301, 680 P2d 1016, *rev den* 297 Or 459 (1984) (police saw defendant and companion at 2:00 p.m. leaving backyard of residence through a hedge and over downed fence, carrying shaving kit, felt bag and suitcase); *State ex rel Juv. Dept. v. Lesh*, 49 Or App 373, 377, 619 P2d 935 (1980) (police observed school age boys pushing wheelbarrow containing stereo equipment during school hours); *State v. Anderson*, 46 Or App 501, 503-04, 612 P2d 309 (1980) (police observed defendant drive into parking lot of closed business at 1:00 a.m. and walk up to door); *State v. Vanderberg*, 25 Or App 811, 815, 550 P2d 1248, *rev den* (1976) (police saw defendant emerge from shadows of church in a high burglary area carrying an object).

[3] The majority's reliance on *State v. Reid*, 107 Or App 352, 811 P2d 1380 (1991), is misplaced. In *Reid*, there were other factors, in addition to the defendant's presence in a known drug area, that connected him with a drug transaction—namely, he matched the description of someone who had recently sold marijuana to another person, and his actions were consistent with drug deals in which one person carries

these factors together does not make them any more compelling. In both *Moya* and *Butkovich,* we held that a person's surprised look and furtive movements by themselves provided no basis for a stop, and neither did mere presence in a high crime area. *Moya,* 97 Or App at 378; *Butkovich,* 87 Or App at 590-91. Where those factors individually failed to add up to a reasonable suspicion, they did not in the aggregate somehow suffice. The same is true here.

I would hold that Oswald lacked probable cause to believe that defendant was in possession of methamphetamine, and the warrantless search of defendant's person therefore cannot be justified as a search incident to arrest.[4]

---

the money and the other the drugs. 107 Or App at 355. Here, nothing tied this particular defendant to prior drug transactions, and he engaged in no conduct consistent with drug activity, other than his apparent intoxication and his presence in the woods. However, as discussed above, those factors do not establish probable cause.

[4] Without the methamphetamine seized from defendant's pocket, there was insufficient probable cause to believe his truck contained controlled substances, and the search of his truck cannot be justified by the automobile exception.