Submitted March 30, reversed and remanded August 17, 2011

### STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

### DONALD GREGORY WISEMAN,
*Defendant-Respondent.*

Lane County Circuit Court
200913913A; A143704

261 P3d 76

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Anna M. Joyce, Assistant Attorney General, filed the brief for appellant.

Peter Gartlan, Chief Defender, and Elizabeth Corbridge Ranweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Defendant was charged with burglary, theft, and possession and distribution of a controlled substance. On defendant's motion, the trial court issued a pretrial order suppressing evidence seized during the stop of a vehicle in which defendant was a passenger. Pursuant to ORS 138.060(1)(c), the state appeals, contending that the trial court erred in concluding that the police officer who stopped the vehicle lacked reasonable suspicion that defendant was engaged in criminal activity. ORS 131.615(1). We review for errors of law, ORS 138.220, and reverse.

We defer to the trial court's findings of historical fact, which are supported by constitutionally sufficient evidence. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Police received a call at 1:50 a.m. from a named homeowner who reported that a suspicious pickup truck had been parked in front of her house for a while, that a person rode up to the truck on a bicycle, loaded the bicycle into the bed of the truck and climbed into the passenger side of the truck, and that the truck then drove away. The caller provided a description of the truck and a license plate number.

Kendrick, the officer who responded to the call, had been a police officer for more than 10 years and had investigated over 500 cases of burglary and theft. He was familiar with the methods and techniques of individuals who are trying to commit residential burglaries. He was aware that, in order to avoid detection, persons committing such crimes will park a car away from the site of the theft, or will be dropped off by someone who then parks the vehicle in the neighborhood. Kendrick recognized the caller's neighborhood as an area of "high risk burglary and other property crimes." As Kendrick drove to the area, he spotted a truck coming toward him that matched the homeowner's description and the license plate number. As the vehicles passed, the driver of the truck appeared to look away from the officer in a way that seemed different from "the usual way that one might encounter in daily life." Kendrick turned around and began to follow the truck. At that time, he noticed the top two inches or so of the head of a person in the passenger seat who appeared to be

slouching. Kendrick also saw a bicycle in the back of the truck.

Kendrick stopped the truck by activating his overhead lights, and testified that he did so based on his belief that the driver and defendant, who was the passenger, had been involved in a theft of the bicycle. Kendrick asked both the driver and defendant for their names. He ran warrant checks on both of their names and learned that there was a warrant for defendant's arrest. Kendrick placed defendant under arrest and advised him of his *Miranda* rights. Defendant told Kendrick that he did not know anything about the bicycle in the back of the truck. The driver subsequently gave Kendrick permission to search the truck, and the officer found methamphetamine, scales, and packaging materials.

Defendant was charged with burglary, theft, and possession and delivery of controlled substances. He filed a motion to suppress, contending that although the officer had a subjective belief that defendant and the driver were engaged in a theft of the bicycle, the suspicion was not objectively reasonable. The trial court granted the motion. The court explained that the caller had failed to observe anything out of the ordinary to support a conclusion that there was something suspicious going on; that the officer's observation of the driver turning his head was insufficient to establish that the driver was behaving furtively; that there was no evidence that the truck was speeding away from the scene of a crime; and that the most recent report of a theft in that neighborhood had been a week earlier. The court concluded that Kendrick's subjective belief that criminal activity was in process was not objectively reasonable:

> "While these facts might well have * * * made [the officer] suspicious of the vehicle and its occupants, they do not amount to reasonable suspicion that this particular vehicle and these particular defendants had been involved in criminal activity such as to justify the stop."

The state assigns error to the trial court's ruling.

Under ORS 131.615(1), a police officer has authority to stop a person if the officer reasonably suspects that the person has or is about to commit a crime. A person "is about

to commit" a crime if the person engages in "unusual conduct that leads a peace officer reasonably to conclude in light of the officer's training and experience that criminal activity may be afoot." ORS 131.605(4). An officer has "reasonable suspicion" that a person has or is about to commit a crime if the officer "holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts[.]" ORS 131.605(5). Thus, reasonable suspicion involves both a subjective and objective component: A stop must be based on the officer's subjective belief that a crime has been or is about to be committed, and that subjective belief must be objectively reasonable under the totality of the circumstances. *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997).

The statutory standard represents a codification of both state and federal constitutional standards. *State v. Valdez*, 277 Or 621, 625-26, 561 P2d 1006 (1977). Under Article I, section 9, of the Oregon Constitution,[1] courts apply an "objective test of observable facts" in determining whether an officer's belief or suspicion is objectively reasonable, and the determination "often will depend on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience." *Ehly*, 317 Or at 80. In addressing the question of objective reasonableness,

"[t]he purpose of [the] review [of the officer's testimony] is to determine whether the officer pointed to specific and articulable facts that are sufficient as a matter of law to give rise to an inference that a *reasonable* officer would hold the required subjective belief."

*Belt*, 325 Or at 12 (emphasis in original).

Under the Fourth Amendment, "reasonable suspicion" entails a minimal level of objective justification for making a stop "that is more than an inchoate and unparticularized suspicion or 'hunch'" but less demanding than probable cause. *United States v. Sokolow*, 490 US 1, 7, 109

---

[1] Article I, section 9, of the Oregon Constitution provides that "[n]o law shall violate the right of the people to be secure in their person, houses, papers, and effects, against unreasonable search, or seizure[.]"

S Ct 1581, 104 L Ed 2d 1 (1989). As under state law, the various facts making up the totality of the circumstances are to be viewed in combination with each other and not in isolation. *United States v. Arvizu*, 534 US 266, 273, 122 S Ct 744, 151 L Ed 2d 740 (2002).

In this case, only the objective component of the reasonable suspicion standard is at issue. The state contends that, under the totality of the circumstances presented at the time of the stop, there were specific and articulable facts that were sufficient to give rise to reasonable suspicion of criminal activity. The facts cited by the state are:

(1)   the homeowner's report that the truck, which she described, had been parked in front of her house for a while;

(2)   the homeowner's observation of a person approaching the truck on a bicycle and placing the bicycle in the back of the truck;

(3)   the late hour of the activity, 1:50 a.m.;

(4)   the high property-crime character of the neighborhood;

(5)   the officer's observations of the driver's and defendant's furtive behavior as they saw the patrol car pass.

The state asserts that those facts, together with the officer's experience that a person committing theft will park the vehicle a distance from the site of the theft and will later rejoin the vehicle, were sufficient to make the officer's subjective belief that a crime was underway objectively reasonable.

In defendant's view, before he stopped the truck, the officer had not observed any behavior that linked defendant or the truck to criminal activity, and the "facts" on which the state relies do not, in and of themselves, provide a basis for reasonable suspicion. Defendant notes that we have held that, in the absence of observations of suspicious conduct, a citizen informant's report of a "suspicious" vehicle does not in and of itself provide reasonable suspicion that criminal activity is afoot. *State v. Greer*, 93 Or App 409, 412, 763 P3d 158 (1988) (citizen's report that two suspicious people were present in a suspicious vehicle did not supply a factual basis for a

stop). Defendant contends, further, that the officer's observation of the driver's and defendant's furtive behavior alone does not provide reasonable suspicion or even add to the reasonable suspicion calculus. *See State v. Butkovich*, 87 Or App 587, 591, 743 P2d 752, *rev den*, 304 Or 548 (1987) (furtive movement alone does not justify a stop). Defendant also points out that a person's presence in a high-crime area is insufficient in and of itself to provide reasonable suspicion of criminal activity. *See State v. Blount*, 143 Or App 582, 589, 924 P2d 860, *rev den*, 324 Or 488 (1996) (presence in high-crime area by itself insufficient for probable cause, but along with other factors can be sufficient). Defendant notes that inferences based on an officer's training and experience are relevant but must nonetheless be grounded on objective facts. *See, e.g., Valdez*, 277 Or at 628 (in the absence of any very remarkable activity, a police officer's instinct and experience cannot, by itself, justify a stop); *United States v. Rojas-Millan*, 234 F3d 464, 469 (9th Cir 2000). Finally, in defendant's view, the officer in this case did not describe any way in which defendant's conduct was unusual. He contends that "many people possess bicycles, and it is not reasonable to presume that a person who possesses a bicycle does so illegally."

It is true that each of the cited facts individually may not be sufficient to provide reasonable suspicion, but they each may be considered as a part of the totality of the circumstances in determining whether there was reasonable suspicion. The named homeowner's report of defendant's activity was reliable and could be considered together with the other circumstances. *See State v. Mitchele*, 240 Or App 86, 94, 215 P3d 760 (2010) (named informant's report based on personal observation of a suspicious person "casing" the neighborhood, corroborated by police officer's own observations, the defendant's furtive movements, and the defendant's presence on a common escape route in a high-crime area together provided reasonable suspicion for stop); *see also State v. Goss*, 219 Or App 645, 650, 184 P3d 1155, *rev den*, 345 Or 94 (2008); *State v. Villegas-Varela*, 132 Or App 112, 115, 887 P2d 809 (1994). Defendant's slouching in the passenger seat, although alone not sufficient to give rise to reasonable suspicion, contributes to the reasonable suspicion calculus. *See Mitchele*, 240 Or App at 94. Additionally, when considered as a part of the

totality of the circumstances, defendant's presence in a high-crime area late at night also contributes to reasonable suspicion. *See Blount*, 143 Or App at 589 (although a person's presence in a high-crime area in and of itself is insufficient to provide probable cause, along with other factors, it may provide probable cause).

The fact that, as defendant asserts, there are innocent reasons why a person would be in possession of a bicycle at 1:50 a.m. and load it into the back of a pickup truck does not mean that the conduct cannot also give rise to a reasonable suspicion of criminality. *State v. Kolendar*, 100 Or App 319, 323, 786 P2d 199 (1990) ("[A]n officer does not need certainty or even probable cause, but only a reasonable suspicion, to support an investigation. The possibility that there may be a non-criminal explanation for the facts observed or that the officer's suspicion will turn out to be wrong does not defeat the reasonableness of the suspicion."). Whether a police officer's suspicion is reasonable often will depend on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience. *Ehly*, 317 Or at 80; *State v. Miglavs*, 337 Or 1, 12, 90 P3d 607 (2004) (officers reasonably may draw inferences about human behavior from their training and experience). Here, Kendrick's training and experience led him to suspect from his observations and from the information that had been reported by the homeowner that the truck had been used in criminal activity. We conclude that the totality of the cited facts, considered together with Kendrick's experience, was sufficient to provide objective reasonable suspicion under ORS 131.605 and the state and federal constitutions that defendant was engaged in criminal activity. We therefore conclude that the trial court erred in suppressing the evidence obtained as a result of the stop of defendant and remand the case for further proceedings.

Reversed and remanded.